# EXHIBIT B

# SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

ID# 2020-0042096-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20102248**

Reuben M. Green - 51
APR 06, 2020 12:06 PM

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

CIVIL ACTION NUMBER   20102248

$214.00 COST PAID

Bray, Brett
_____
**PLAINTIFF**

VS.

Lathem Time Corporation
_____
**DEFENDANT**

### SUMMONS

TO: LATHEM TIME CORPORATION

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Craig Goodmark**
> **Goodmark Law Firm**
> **1425 A Dutch Valley Place**
> **ATLANTA, Georgia 30324**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 6th day of April, 2020.**

Clerk of Superior Court

_____
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

ID# 2020-0042098-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
**20102248**
Reuben M. Green - 51
APR 06, 2020 12:06 PM

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

DISCLOSURE STATEMENT
CLERK OF SUPERIOR COURT

CASE NUMBER    20102248

**Bray, Brett**

Plaintiff

Vs.

**Lathem Time Corporation**

Defendant

## TYPE OF ACTION

- o Divorce without Agreement Attached
- o Divorce with Agreement Attached
- o Domestic Relations
- o Damages Arising out of Contract
- ☑ Damages Arising out of Tort
- o Condemnation
- o Equity
- o Zoning – County Ordinance Violations (i.e., Injunctive Relief-Zoning)
- o Zoning Appeals (denovo)
- o Appeal, Including denovo appeal – excluding Zoning

- o URESA
- o Name Change
- o Other
- o Recusal
- o Adoption

## PREVIOUS RELATED CASES

Does this case involve substantially the same parties, or substantially the same subject matter, or substantially the same factual issues, as any other case filed in this court (Whether pending simultaneously or not)?

- ☑ NO
- o YES – If yes, please fill out the following:

    1. Case # _____

    2. Parties _____

    3. Assigned Judge _____

    4. Is this case still pending?    o Yes    o No

    5. Brief description of similarities:

/S/   Goodmark, Craig _____

Attorney or Party Filing Suit

ID# 2020-0042095-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20102248**

Reuben M. Green - 51
APR 06, 2020 12:06 PM

*Rebecca Keaton*

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **BRET BRAY, individually and on behalf of all others similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Case No.** |
| **v.** ) | |
| ) | |
| **LATHEM TIME CO.,** ) | |
| ) | |
| **Defendant.** ) | |

## CLASS ACTION COMPLAINT

Plaintiff Bret Bray ("Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated (the "Class"), bring the following Class Action Complaint ("Complaint") pursuant to O.C.G.A. 9-11-23, against Lathem Time Co. ("Lathem" or "Defendant"), its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collection, use, and storage of Plaintiff's and the Class' sensitive biometric data under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. Plaintiff initially filed this case against Defendant in the Circuit Court of Montgomery County, Illinois, on April 22, 2019. Defendant timely removed the Montgomery County, Illinois action to the District Court for the Central District of Illinois on June 18, 2019. The Central District dismissed Plaintiff's case on March 30, 2020 for lack of personal jurisdiction over Defendant. Plaintiff now brings this action in Defendant's home state. Plaintiff alleges as follows upon personal knowledge as to himself, his own

acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.     Defendant Lathem is a leading provider of human resource management software and services that's best known for helping hundreds of thousands of businesses track employee time and process payroll.

2.     To help make employee time and attendance tracking more accurate, Lathem encourages its customers to use biometric-based time clocks, which use an employee's biometrics to punch in and out of work, instead of key fobs, identification numbers, or cards.

3.     Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – facial biometrics are unique, permanent biometric identifiers associated with each employee. This exposes employees who are required to use Lathem devices as a condition of their employment to serious and irreversible privacy risks. For example, if a database containing facial biometric data or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Google, Equifax, Uber, Panera, Whole Foods, Chipotle, Trump Hotels, Facebook/Cambridge Analytica, and Marriott data breaches or misuses – employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

4.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5

million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.

5.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-indiahas-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

6.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-accessto-billion-aadhaar-details/523361.html.

7.     In August 2019 it was widely reported that Suprema, a security company responsible for a web-based biometrics lock system that uses fingerprints and facial geometry scans in 1.5 million locations around the world, maintained biometric data and other personal information on a publicly accessible, unencrypted database. *Major Breach Found in Biometrics System Used by Banks, UK police and Defence Firms*, The Guardian (Aug.                14,                2019),                available                at

https://www.theguardian.com/technology/2019/aug/14/major-breach-found-in-biometrics-system-used-by-banks-uk-police-and-defence-firms.

8.      In the United States, law enforcement, including the Federal Bureau of Investigation and Immigration and Customs Enforcement, have attempted to turn states' Department of Motor Vehicles databases into biometric data goldmines, using facial recognition technology to scan the faces of thousands of citizens, all without their notice or consent. Drew Harwell, *FBI, ICE Find State Driver's License Photos Are a Gold Mine for Facial-Recognition Searches*, The Washington Post (July 7, 2019), *available at* https://www.washingtonpost.com/technology/2019/07/07/fbi-ice-find-state-drivers-license-photos-are-gold-mine-facial-recognition-searches/?noredirect=on&utm_term=.da9afb2472a9.

9.      This practice has been criticized by lawmakers. Some states, including Illinois, have refused to comply with law enforcement's invasive requests. *State Denying Facial Recognition Requests*, Jacksonville Journal-Courier (July 9, 2019), *available at* https://www.myjournalcourier.com/news/article/State-denying-facial-recognition-requests-14081967.php.

10.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as facial biometrics.

11.     Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards the statutorily protected privacy rights of Illinois citizens and

unlawfully collects, stores, and uses their biometric data in violation of BIPA. Specifically, Defendant violated and continues to violate BIPA because it did not and continues not to:

    a. Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their facial geometry scans were being collected, stored, and used, as required by BIPA;

    b. Receive a written release from Plaintiff and others similarly situated to collect, store, or otherwise use his facial geometry scans, as required by BIPA.

    c. Develop and adhere to a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' facial geometry scans, as required by BIPA.

12.    Accordingly, this Complaint seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding liquidated damages to Plaintiff and the proposed class.

## PARTIES

13.    Plaintiff Bret Bray is a natural person and a citizen in the State of Illinois.

14.    Defendant Lathem is a corporation organized and existing under the laws of the State of Georgia.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over Defendant because it is established and headquartered in the State of Georgia.

16.    Pursuant to O.C.G.A. §14-3-510, venue is proper because Defendant conducts business in this State, Defendant conducts business transactions in this County, and Defendant is headquartered in this County.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

17.     Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including facial-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS 14/5.

18.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy.  The bankruptcy was alarming to the Illinois legislature because there was suddenly a serious risk that millions of fingerprint records – which, similar to other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens.  The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

19.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

20.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations.  740 ILCS 14/20.

21.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things: collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

1) Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

2) Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

3) Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

22.     BIPA specifically applies Defendant's collection of Illinois Citizens' biometrics within the State of Illinois.  BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment."  740 ILCS 14/10.

23.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand geometry and fingerprints, and – most importantly here – facial geometry. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

24.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d).

25.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

26.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse. Biometric data, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

27.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed.  Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, and use, biometrics and creates a private right of action for lack of statutory compliance.

28.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

**II.     Defendant Violates the Biometric Information Privacy Act.**

29.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using biometric data as an authentication method stopped doing so.

30.     However, Defendant failed to take note of the shift in Illinois law governing the collection and use of biometric data. As a result, Defendant continues to collect, store, and use Illinois Citizens' biometric data in violation of BIPA.

31.     Specifically, when an employee first begins work at a company that uses one of Lathem's biometric devices, they are required to have their facial geometry scanned in order to enroll them in the Lathem database.

32.     In those instances, Lathem fails to inform the employees that Lathem is collecting, storing, or using their sensitive biometric data, or the extent of the purposes for which it collects their sensitive biometric data.

33.     Upon information and belief, Defendant failed and continues to fail to develop and adhere to a written, publicly-available policy identifying its retention schedule and guidelines for permanently destroying collected biometric data when the initial purpose for collecting or obtaining their biometrics is no longer relevant, as required by BIPA.

34.     Upon information and belief, Defendant failed and continues to fail to inform users of the purposes and duration for which it collects their sensitive biometric data; and

fails to obtain written releases from Illinois citizens before collecting their facial geometry data.

35.     In addition, Lathem profits from the use of employees' biometric data. For instance, Lathem markets its biometric time clocks to employers as superior options to traditional time clocks, which can be used in a way to facilitate time theft. By marketing its clocks in this manner, Lathem obtains a competitive advantage over other time clock companies and secures profits from its use of biometric data, all while failing to comply with the minimum requirements for handling employees' biometric data established by BIPA.

36.     The Pay by Touch bankruptcy, which triggered the passage of BIPA, highlights why such conduct – where individuals are aware that they are providing a scan of their facial geometry but are not aware to whom or for what purposes they are doing so – is dangerous. This bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric data such as facial geometry data derived therefrom, who exactly is collecting their biometric data, where it will be transmitted, for what purposes it will be transmitted, and for how long.

37.     Remarkably, Defendant has created the same situation that Pay by Touch did by assembling a database of biometric data through broadly deployed facial recognition scanners, but failing to comply with the law specifically designed to protect individuals whose biometrics are collected in these circumstances. Defendant disregards these obligations and Illinois citizens' statutory rights and instead unlawfully collects, stores, and

uses citizens' biometric identifiers and information without ever receiving the individual's informed written consent required by BIPA.

38.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

39.     By and through the actions detailed above, Defendant disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.    Plaintiff Bret Bray's Experience.**

40.      Plaintiff Bret Bray was hired by Hixon Lumber Supply located in Hillsboro, Illinois in January 2019 and worked there until March 2019.

41.     As a condition of employment with Hixon, Bray was required to scan his facial geometry using a Lathem device so his employer could track his time.

42.     Lathem subsequently stored Bray's facial biometric data in its database(s).

43.     Bray was required to scan his facial geometry on a Lathem device each time he clocked in for work and clocked out of work.

44.     Bray has never been informed of the specific limited purposes or length of time for which Defendant collected, stored, and/or used his biometric data.

45.    Bray is unaware of any biometric data retention policy developed by Defendant, nor has he ever been informed whether Defendant will ever permanently delete his biometric data.

46.    Bray has never been provided with nor ever signed a written release allowing Defendant to collect, store, or use his biometric data.

47.    Bray has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

48.    No amount of time or money can compensate Bray if his biometric data is compromised by the lax procedures through which Defendant captured, stored, or used his and other similarly-situated individuals' biometrics. Moreover, Bray would not have provided his biometric data to Defendant if he had known that Defendant would retain such information for an indefinite period of time without his consent.

49.    A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"). Nonetheless, Bray has been aggrieved because he suffered an injury-in-fact based on Defendant's violations of his legal rights. Defendant intentionally interfered with Bray's right to control his own sensitive biometric data. Additionally, Bray suffered an invasion of a legally protected interest when Defendant secured his personal and private biometric data at a time when it had no right to

do so, a gross invasion of his right to privacy. BIPA protects citizens like Bray from this precise conduct.

50.     Pursuant to 740 ILCS 14/15(b), Bray was entitled to receive certain information prior to Defendant securing his biometric data; namely, information advising him of the specific limited purpose(s) and length of time for which Defendant to collect, store, and use his private biometric data; information regarding Defendant's biometric retention policy; and, a written release allowing Defendant to collect, store, and use his private biometric data.

51.     Bray has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of his biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendant's policies and practices; in the form of interference with his right to control his confidential biometric data; and, in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

52.     As Bray is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

53.     Pursuant to the Georgia Code of Civil Procedure, O.C.G.A. 9-11-23, Plaintiff brings claims on his own behalf and as representatives of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

54.     As discussed supra, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

55.     Plaintiff seeks class certification under O.C.G.A. 9-11-23 for the following class of similarly-situated Illinois citizens under BIPA:

> All individuals in the State of Illinois who had their facial geometry collected, captured, received, obtained, maintained, or stored by Defendant during the applicable statutory period.

56.     This action is properly maintained as a class action under O.C.G.A. 9-11-23 because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

C.     The claims of Plaintiff are typical of the claims of the class; and,

D.     Plaintiff will fairly and adequately protect the interests of the class.

### Numerosity

57.     The total number of putative class members exceeds fifty (50) individuals. The exact number of class members can easily be determined from Lathem records.

## **Commonality**

58.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.    Whether Defendant collected, captured or otherwise obtained Plaintiff's biometric identifiers or biometric information;

B.    Whether Defendant properly informed Plaintiff of its purposes for collecting, using, and storing his biometric identifiers or biometric information;

C.    Whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's biometric identifiers or biometric information;

D.    Whether Defendant sold, leased, traded, or otherwise profited from Plaintiff's biometric identifiers or biometric information;

E.    Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the individual, whichever occurs first;

F.    Whether Defendant complies with any such written policy (if one exists);

G.    Whether Defendant used Plaintiff's facial biometrics to identify him;

H.    Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

I.    Whether the violations of BIPA were committed negligently; and

J.    Whether the violations of BIPA were committed intentionally and/or

recklessly.

59.     Plaintiff anticipates that Defendant will raise defenses that are common to the class.

## Adequacy

60.     Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality

61.     The claims asserted by Plaintiff are typical of the class members he seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

62.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against an out of state Defendant. However, if any such class member should become known, he or she can "opt out" of this action.

## Predominance and Superiority

63.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable.  Class action

treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually.  Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

64.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action.  Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly Available Retention Schedule**

65.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data

(at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

67.     Defendant fails to comply with these BIPA mandates.

68.     Defendant Lathem is a Georgia corporation that conducts business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

69.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their facial geometry), as explained in detail in Sections II and III, supra. *See* 740 ILCS § 14/10.

70.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

71.     Defendant failed to develop and adhere to a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

72.     Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

73.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the

Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

74.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

76.     Defendant fails to comply with these BIPA mandates.

77.     Defendant Lathem is a Georgia corporation that conducts business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

78.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their facial geometry), as explained in detail in Sections II and III, supra. *See* 740 ILCS § 14/10.

79.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

80.     Defendant systematically and automatically collected, used, and stored Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

81.     Defendant did not inform Plaintiff in writing that his biometric identifiers and/or biometric information were being collected, stored and used, nor did Defendant inform Plaintiff in writing of the specific purpose and length of term for which his biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)- (2).

82.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, et seq.

83.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3)

statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Bret Bray respectfully requests that this Court enter an Order:

A.   Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Bret Bray as Class Representative, and appointing Stephan Zouras, LLP as Class Counsel;

B.   Declaring that Defendant's actions, as set forth above, violate BIPA;

C.   Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.   Declaring that Defendant's actions, as set forth above, were intentional or reckless;

E.   Declaring that Defendant's actions, as set forth above, were negligent;

F.   Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers and/or biometric information in compliance with BIPA;

G.   Awarding Plaintiff and the Class his reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

H.   Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

I.   Provide such further relief as the Court deems just and equitable.

DATED: This the 6th day of April, 2020.

Respectfully Submitted,

*/s/ Gerald Weber*
Gerald Weber
Georgia Bar No. 744878
Law Offices of Gerry Weber
P.O. Box 5391
Atlanta, GA 31107
Phone: (404) 522-0507
wgerryweber@gmail.com

*/s/ Craig Goodmark*
Craig Goodmark
Georgia Bar No. 301428
Goodmark Law Firm
1425 A Dutch Valley Place
Atlanta, Georgia 30324
(404) 719-4848
cgoodmark@gmail.com

Ryan F. Stephan*
Haley R. Jenkins*
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
hjenkins@stephanzouras.com

Brandon Wise*
PEIFFER WOLF CARR & KANE, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
314-833-4827
bwise@pwcklegal.com

*pro hac vice* forthcoming

**General Civil and Domestic Relations Case Filing Information Form**

☑ Superior or ☐ State Court of ___Cobb_____ **County**

ID# 2020-0042097-CV
✍ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20102248**

Reuben M. Green - 51
APR 06, 2020 12:06 PM

Rebecca Keaton
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

| For Clerk Use Only | |
|---|---|
| **Date Filed** _04-06-2020_<br>MM-DD-YYYY | **Case Number** _20102248_ |

**Plaintiff(s)**

Pray, Brett

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I | Suffix | Prefix |

**Defendant(s)**

Lathem Time Corporation

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _Goodmark, Craig_____  Bar Number _301415_____  Self-Represented ☐

Check one case type and, if applicable, one sub-type in one box.

**General Civil Cases**

- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contract**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☐ **Garnishment**
- ☑ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**

- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____       _____
Case Number                        Case Number

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.20

ID#2020-0068547-CV
**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20102248**

Reuben M. Green - 51
JUL 06, 2020 10:00 AM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| **BRET BRAY,** | * | |
| **Plaintiff,** | * | |
| | * | **CIVIL ACTION FILE NO.** |
| **v.** | * | |
| | * | 20-1-02248-51 |
| **LATHEM TIME CO.,** | * | |
| **Defendant.** | * | |

## <u>ORDER TO PERFECT SERVICE WITHIN SIXTY DAYS OR</u>

## <u>DISMISS FOR WANT OF PROSECUTION</u>

Due to the COVID-19 pandemic, case deadlines were tolled during the Judicial Emergency. The Second Order Extending Judicial Emergency issued by the Georgia Supreme Court provides for the reestablishment of deadlines on a case by case basis. It being apparent to the Court that this case was filed on April 6, 2020, and service on Respondent herein has not been perfected, this Court **ORDERS** that Petitioner perfect service within sixty (60) days from the day this Order is signed or this matter shall be dismissed without prejudice.

If the parties object to the reestablishment of said deadlines, they shall provide written notice to the court, copying the other party, with the grounds for the objection no later than July 20, 2020 at 5 p.m.

**SO ORDERED**, this the ___2___ day of July, 2020.

_____
REUBEN M. GREEN
CHIEF JUDGE, SUPERIOR COURT
COBB JUDICIAL CIRCUIT

### CERTIFICATE OF SERVICE

I hereby certify that I have this day served via PeachCourt to parties indicated with an

email address, and via USPS with sufficient postage affixed thereto to the parties indicated with

a mailing address the following:

Gerald Weber
wgerryweber@gmail.com

Craig Goodmark
cgoodmark@gmail.com

Ryan F. Stephan
rstephan@stephanzouras.com
hjenkins@stehpanzouras.com

Brandon Wise
bwise@pwcklegal.com

This ___6___ day of July, 2020.

/s/ Laura Myler
Laura L. Myler,
Staff Attorney to
Chief Judge Reuben M. Green

ID# 2020-0092255-CV
⚡ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20102248**
Reuben M. Green - 51
AUG 31, 2020 10:22 AM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **BRET BRAY, individually and on behalf of all others similarly situated,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | )    **Case No.   20102248** ) |
| **LATHEM TIME CO.,** | ) ) |
| **Defendant.** | ) ) |

## COMBINED MOTION FOR EXTENSION OF TIME TO EFFECTUATE SERVICE AND MOTION TO CONTINUE SHOW CAUSE HEARING

Plaintiff Bret Bray ("Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated (the "Class"), move this Court for an extension effectuate service on Defendant Lathem Time Co. ("Defendant") and further move for a continuance of the Show Cause Hearing currently set for August 31, 2020. In support of this motion, Plaintiff states as follows:

1.     This matter was filed on April 6, 2020.

2.     A summons was issued for service on April 6, 2020.

3.     The Cobb County Sheriff's Department attempted service multiple times. See, Ex. 1, Summons Returned Non-Est.

4.     Upon information and belief, during the time that multiple attempts were made to serve Defendant, the business may have been shut down or closed due to the COVID-19 pandemic.

1

5.      On or about June 9, 2020, a process server engaged by Plaintiff again attempted service on Defendant.

6.      After attempting service on June 9, 2020, the process server was unable to effectuate service, although he reported to Plaintiff's Counsel that:

      a.  Defendant's information was listed on the building directory;

      b.  The door to Defendant's office was locked and the lights were off;

      c.  No one answered the doorbell for Defendant;

      d.  Defendant's office did not appear abandoned, only closed.

Affidavit of Jeff Doblier, attached hereto as Exhibit 2.

7.      On June 12, 2020, the process server attempted service at a production facility believed to be owned by Defendant. The process server found that the production center had been abandoned and that the property was for sale. In an attempt to locate Defendant, the process server called Defendant's main telephone line, and spoke to a sales representative. Defendant's representative indicated that everyone at the Galleria location is working remotely, but that Defendant is still taking orders. Further, the process server reported that the Galleria location still had (viewable through the window) a candy dish, a sign-in book, and furniture.

8.      Plaintiff has made diligent attempts to serve Defendant, in that Plaintiff has engaged the Sheriff's Department and a private process server to effectuate service on Defendant.

9.      Both the Sheriff's Department and a private process server were unable to effectuate service after multiple attempts, each.

2

10.     Plaintiff and his Counsel believe that this is due to the shutdown caused by the COVID-19 pandemic.

11.     In an effort obtain service through prior counsel, Plaintiff's Counsel contacted Defendant's prior counsel. Defendant's prior counsel responded that "We are not authorized to accept service."

12.     At this time, Plaintiff respectfully requests an extension of time to effectuate service. Plaintiff will continue to work with a process server to effectuate service on Defendant.

13.     Additionally, Plaintiff respectfully requests that the Show Cause order directing service be completed by August 31, 2020 be continued generally, as Plaintiff is continuing to attempt to effectuate service on Defendant.

14.     Finally, Plaintiff respectfully requests that he be granted leave to effectuate service through alternative methods, including mail via a third-party carrier and posting at Defendant's place of business. Pursuant to O.C.G.A. § 9-11-4(j) "the court may prescribe service according to the exigencies of each case, consistent with the Constitution." Here, Defendant appears to be operating remotely. In sending the Complaint and service documents via Third-Party Carrier, the Parties will have a record of when and where the documents are delivered. In utilizing posting, if Defendant's employees visit the office, the documents will be posted on the front door in a clearly visible location.

15.     These two methods of alternative service take into account the Defendant's apparent remote work and the exigencies of this case, and also comport with Defendant's Constitutional rights.

**WHEREFORE**, Plaintiff respectfully requests that:

1. This motion be granted;

2. The time to effectuate service be extended to September 30, 2020;

3. The Show Cause order be continued generally,

4. Plaintiff be authorized to serve Defendant through alternative service, including mail via third-party carrier (FedEx) and posting the Complaint and Summons on Defendant's office door.

DATED: This the 31st day of August, 2020.

Respectfully Submitted,

_/s/ Gerald Weber_
Gerald Weber
Georgia Bar No. 744878
Law Offices of Gerry Weber
P.O. Box 5391
Atlanta, GA 31107
Phone: (404) 522-0507
wgerryweber@gmail.com

_/s/ Craig Goodmark_
Craig Goodmark
Georgia Bar No. 301428
Goodmark Law Firm
1425 A Dutch Valley Place
Atlanta, Georgia 30324
(404) 719-4848
cgoodmark@gmail.com

Ryan F. Stephan*
Haley R. Jenkins*
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
hjenkins@stephanzouras.com

4

Brandon Wise*
**PEIFFER WOLF CARR & KANE, APLC**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
314-833-4827
bwise@pwcklegal.com

*pro hac vice* forthcoming

COPY   **EXHIBIT 1**   KEEP

## SHERIFF'S ENTRY OF SERVICE

| | |
|---|---|
| Civil Action No. _____ 20102248 | Superior Court ☒   Magistrate Court ☐ |
| | State Court ☐   Probate Court ☐ |
| Date Filed _____ | Juvenile Court ☐ |

Georgia, _____ **COBB** _____ COUNTY

Attorney's Address   **Goodmark, Craig**
**Goodmark Law Firm**
**1425 A Dutch Valley Place**
**ATLANTA, Georgia 30324**

Bray, Brett
_____

_____
                  Plaintiff

VS.

Lathem Time Corporation
_____

Name and Address of Party to be Served.
**Lathem Time Corporation**
_____
                  Defendant

**200 Galleria Parkway Suite 330**
_____

**Atlanta, Georgia 30339**
_____
                  Garnishee

### SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
☐ I have this day served the defendant_____personally with a copy of the within action and summons.

**NOTORIOUS**
I have this day served the defendant_____by leaving a copy of the action and summons at his most notorious place of abode in this County.
☐ Delivered same into hands of_____described as follows: age, about _____years; weight _____pounds; height, about _____feet and _____inches, domiciled at the residence of defendant.

**CORPORATION**
Served the defendant_____a corporation
☐ by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL**
☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of the same in the United States Mail, first class in an envelope property address to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
☒ Diligent search made and defendant_ LATHEM  TIME  —  Multiple Attempts
    not to be found in the jurisdiction of this court.   No contact

This _ 21 _day of_ APRIL _, 20_ 23 _         CONTRERAS
                           16045
                                        Deputy

**EXHIBIT 2**

## STATE OF GEORGIA

BRET BRAY, individually and on behalf )
of all others similarly situated,           )
                                            )
                **Plaintiffs,**         )
                                            )      Case No.   **20102248**
        **v.**                              )
                                            )
LATHEM TIME CO.,                            )
                                            )
                **Defendant.**          )

### AFFIDAVIT OF JEFF DOLBIER

NOW COMES JEFF DOBLIER, and, after being duly sworn, herein states and declares the following:

1.    I give this declaration based upon my own personal knowledge.

2.    I am an adult citizen of the United States. I am competent to testify as set out herein.

3.    On or about June 9, 2020, I attempted service on Defendant.

4.    I was unable to effectuate service although:

    a.  Defendant's information was listed on the building directory;

    b.  The door to Defendant's office was locked and the lights were off;

    c.  No one answered the doorbell for Defendant;

    d.  Defendant's office did not appear abandoned, only closed.

5. On June 12, 2020, I again attempted service at a production facility believed to be owned by Defendant.

6. I found that the production center had been abandoned and that the property was for sale. In an attempt to locate Defendant, I called Defendant's main telephone line, and spoke to a sales representative. Defendant's representative indicated to me that everyone at the Galleria location is working remotely, but that Defendant is still taking orders.

7. I returned to Defendant's registered place of business at the Galleria location and could see through the window a candy dish, a sign-in book, and furniture.

FURTHER AFFIANT SAYETH NAUGHT.

This 28ᵗʰ day of <u>August</u>, <u>2020</u>.

The Affiant certifies that this declaration is true and correct upon pain and penalty of perjury. *See*, 20 U.S.C. § 1746.


JEFF DOLBIER, Declarant

ID# 2020-0098131-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20102248**

Reuben M. Green - 51
SEP 14, 2020 12:43 PM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **BRET BRAY,** | * | |
| **Plaintiff,** | * | |
| | * | **CIVIL ACTION FILE NO.** |
| **v.** | * | |
| | * | 20-1-02248-51 |
| **LATHEM TIME CO.,** | * | |
| **Defendant.** | * | |

### ORDER ON MOTION FOR EXENSION OF TIME TO EFFECUTATE SERVICE

This matter comes before the Court on Plaintiff Bret Bray's Motion for Extension of Time to Effectuate Service and Motion to Continue Show Cause Hearing filed on August 31, 2020 in which Plaintiff seeks to extend the time to perfect service. This matter was filed on April 6, 2020 during the pendency of the Statewide Judicial Emergency due to the COVID-19 pandemic. Pursuant to the Second Order Extending Statewide Judicial Emergency issued by the Georgia Supreme Court, this Court reestablished deadlines which were tolled by operation of the Judicial Emergency. Said Order was entered on June 2, 2020 and provided the parties a deadline of July 20, 2020 to object to the reestablishment of deadlines. In addition, the July 2, 2020 Order required Plaintiff to perfect service within sixty days.

Plaintiff has requested an extension through the end of September 2020 to perfect service. Plaintiff also seeks to perfect service by pursuant to O.C.G.A. § 9-11-4(j)'s provision allowing alternative service by mailing the Complaint and Summons via a "third-party carrier", such as FedEx.

Plaintiff's request to extend service is **GRANTED**. Plaintiff shall have ninety days from the date of this order to perfect service on Defendant herein.

Plaintiff's request to perfect service via a third-party carrier is **DENIED**. "This Code section allows for alternative methods of service in situations where there are other, applicable

statutes besides O.C.G.A. § 9-11-4 that provide for service; or where the provisions for service are unclear.  It does not allow inapplicable service provisions ... to apply where they do not." In re C.S., 282 Ga. 7, 8 (2007).  Moreover, "O.C.G.A. § 9-11-4(j) expressly provides that the methods of service set forth in § 9-11-4 are cumulative and that whenever a statute provides for another method of service, service may be made under circumstances and in the manner prescribed by that statute." U.S. Bank Nat. Ass'n v Kho & Lee, LLC, 614 Fed. Appx. 985, 987 (11th Cir. 2015) (internal punctuation and citation omitted).  Plaintiff does not argue that another statute authorizes service nor do they cite a statute that allows for service by a third-party carrier.  Therefore, service shall be perfected by one of the ways specified by O.C.G.A. § 9-11-4.

**SO ORDERED**, this the _____ day of September, 2020.

REUBEN M. GREEN
CHIEF JUDGE, SUPERIOR COURT
COBB JUDICIAL CIRCUIT

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served via PeachCourt to parties indicated with an email address, and via USPS with sufficient postage affixed thereto to the parties indicated with a mailing address the following:

Gerald Weber
wgerryweber@gmail.com

Craig Goodmark
cgoodmark@gmail.com

Ryan F. Stephan
rstephan@stephanzouras.com
hjenkins@stehpanzouras.com

Brandon Wise
bwise@pwcklegal.com

This 14 day of September, 2020.

/s/ Laura Myler
Laura L. Myler,
Staff Attorney to
Chief Judge Reuben M. Green