# EXHIBIT B

*Bray v. Hixson* — Plaintiff's Unopposed Motion and Memorandum  in Support of Preliminary Approval of Class Action Settlement (with Exhibit 1, "Settlement Agreement")

FILED
Montgomery Co. Circuit Court
4th Judicial Circuit
Date: 4/27/2021 2:21 PM
Holly Lemons

## IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
## MACOUPIN COUNTY, ILLINOIS

| | | |
|---|---|---|
| BRET BRAY AND JASON HOUSMAN, | ) | |
| INDIVIDUALLY AND ON BEHALF OF | ) | |
| ALL OTHERS SIMILARLY SITUATED, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Case No.: 2019L9 |
| | ) | |
| HIXSON LUMBER SALES OF ILLINOIS, | ) | |
| INC., | ) | |
| | ) | |
| *Defendant.* | ) | |

## PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Bret Bray and Jason Housman moves for preliminary approval of a class action settlement in this matter. The Settlement Agreement and Release, proposed Notice, and proposed Preliminary and Final Approval Orders are attached as Exhibits to the Settlement Agreement, which are provided as Exhibit 1.

## I.    INTRODUCTION

Plaintiffs brought a putative class action against Defendant Hixson Lumber Sales of Illinois, Inc., (referred to herein as "Hixson Lumber" or "Defendant"), on September 6, 2019 asserting claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. Defendant denies these allegations, denies violation of any law, and denies all liability. The parties have reached a proposed settlement that provides all Settlement Class Members with the ability to receive a share of the proposed Settlement Fund. *See* Settlement Agreement, attached hereto as Exhibit 1. The Settlement Agreement establishes a Settlement Fund in the amount of $77,000.00. If approved, the Settlement Agreement will bring certainty, closure, and valuable relief for individuals to what otherwise

would likely be contentious and costly litigation regarding Defendant's alleged unlawful collection, use, storage, and dissemination of individuals' biometric identifiers and/or biometric information.

Plaintiffs now seek preliminary approval of the Settlement, certification of a settlement class, appointment of class counsel, and approval of the proposed form and method of class notice. This Motion describes in detail the reasons why preliminary approval is in the best interests of the class and is consistent with 735 ILCS 5/2-801. As discussed in more detail below, the most important consideration in evaluating the fairness of a proposed class action settlement is the strength of Plaintiffs' case on the merits balanced against the relief obtained in the settlement. *See Steinberg v. Software Associates, Inc.*, 306 Ill. App. 3d 157, 170 (1st Dist. 1999); *City of Chicago v. Korshak*, 206 Ill. App. 3d 968, 972 (1st Dist. 1990); *see also Am. Int'l Grp., Inc. et al v. ACE INA Holdings, et al.*, Nos. 07-cv-2898, 09-cv-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012).[1] While Plaintiffs believe they could secure class certification and prevail on the merits at trial, success is not guaranteed, particularly given the uncertainty in the law surrounding BIPA, and Defendant is prepared to vigorously defend this case. The terms of the Settlement, which includes a Settlement Fund providing Settlement Class Members the ability to receive meaningful cash compensation meet and exceed the applicable standards of fairness. Accordingly, the Court should preliminarily approve the Settlement so that Settlement Class Members can receive notice of their rights and the claims administration process may begin.

---

[1] Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and, therefore, "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois." *Avery v. State Farm Mut. Ins. Co.*, 216 Ill. 2d 100, 125 (2005).

## II.    RELEVANT BACKGROUND

### A.    BIPA

BIPA is an Illinois statute that provides individuals with certain protections for biometric data covered by the statute. To effectuate its purpose, BIPA requires private entities that seek to use biometric identifiers (*i.e.*, hand geometry) and biometric information (any information gathered from a biometric identifier that is used to identify an individual) to:

1. Inform the individual in writing that biometric identifiers and/or biometric information will be collected, stored, used, or disseminated;

2. Inform the individual in writing of the specific purpose and length of time for which such biometric identifiers and/or information is being collected, stored, used, and disseminated;

3. Obtain a written release from the individual allowing the capture, collection, storage, use, and dissemination of their biometric identifiers and/or information; and

4. Publish a publicly available retention schedule and guidelines for permanently destroying biometric identifiers and/or information.

740 ILCS 14/15.

BIPA was enacted in large part to protect certain individual biometric data, provide individuals with a means of enforcing their statutory rights, and regulate the practice of collecting, using, and disseminating such sensitive information.

### B.    Procedural History

Plaintiffs filed a Class Action Complaint in the Circuit Court of Montgomery County September 6, 2019, alleging that Defendant utilizes biometric timekeeping devices at its location in Illinois and required its employees to use the devices when clocking into and out of work. Plaintiffs alleged that Defendant failed to comply with BIPA by: (1) failing to inform individuals in writing that it will be capturing, collecting, storing, using, and disseminating biometric data (*i.e.*, statutorily-defined biometric identifiers and/or information) prior to doing so; (2) failing to obtain a written release for the capture of biometric data prior to such capture; (3) failing to inform individuals in writing of the

specific purpose and length of time for which biometric data is captured; and (4) failing to publish a publicly available retention schedule and guidelines for permanently destroying biometric data.

Following the filing of the lawsuit, the Parties to this Agreement began discussing the potential for a class wide settlement and exchanged information on the underlying facts of the case and the size of the class. Following arms-length negotiations, the Parties negotiated a settlement by which the Parties agreed to resolve all matters pertaining to, arising from, or associated with the Litigation. The Parties then spent a significant amount of time reducing the settlement to a full written document and incorporated exhibits, presented to the Court as Exhibit 1. This matter was filed for purposes of obtaining approval of the class action settlement due to the uncertainty of the federal court's jurisdiction over certain BIPA claims – namely § 15(a) claims – in light of the Seventh Circuit's opinion in *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 619 (7th Cir. 2020) (finding federal courts lack Art. III jurisdiction over § 15(a) claims).

## III.    THE PROPOSED SETTLEMENT

### A.    The Settlement Class

All persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant from five years preceding the filing of this action to the date the Court grants preliminary approval in violation of BIPA as alleged in the complaint.

Exhibit 1, ¶ 1.23. The Parties estimate that the size of the Class is 70 individuals.

### B.    The Settlement Fund

The proposed Settlement will establish a $77,000.00 Settlement Fund. Exhibit 1, ¶ 1.25. Each Settlement Class Member who does not timely file a Request for Exclusion will receive an equal share of 1 / 70 of the Settlement Fund, after first deducting approved amounts for notice and administration costs, attorneys' fees and costs, and an incentive awards to Plaintiffs from the Settlement Fund. To the extent that a check issued to a Settlement Class Member is not cashed within ninety (90) days after the date of issuance, the check will be void, and the funds will be paid to the *cy pres*. The *cy pres*

recipient will not be entitled to more than $5,000. If more than $5,000 remains, the parties will identify additional *cy pres* recipient(s) to receive such funds. ¶ 2.1.

### C.    Notice and Settlement Administration

The claims at issue in this litigation primarily consist of Defendant's alleged violations of BIPA with respect to a group of individuals alleged to be Defendant's employees. Accordingly, to reach as many potential Class Members as possible, notice will be provided via direct mail notice by U.S. Mail to all Class Members. § 4, ¶ 4.1.1.

### D.    Exclusion and Objection Procedures

Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. The procedures and deadlines for filing exclusion requests and objections will be identified in the Notice and the Reminder Notice directly sent to Class Members. Exhibit 1, §§ IX, X. The Notices inform Settlement Class Members that the Final Approval Hearing will be their opportunity to appear and have their objections heard. The notices also inform Settlement Class Members that they will be bound by the Release contained in the Settlement Agreement unless they exercise their right to exclusion in a timely manner. *See id.*, ¶¶ 4.3, 4.4 and Exh. A to Exh. 1.

### E.    Release

In exchange for the relief described above, Settlement Class Members who do not exclude themselves will provide Defendant and the Releasees a full release of all "Released Claims," generally including BIPA claims, arising out of, related to, or connected with the alleged capture, collection, storage, possession, transmission, conversion, disclosure, and/or other use of biometric identifiers and/or biometric information in connection with the time-keeping system. Exhibit 1, § 3.

## IV.    ARGUMENT

### A.    The Terms of the Settlement Are Fair and Reasonable and Warrant Preliminary Approval.

The Settlement represents a fair and reasonable resolution of this dispute and is worthy of notice to and consideration by the Settlement Class Members. It will provide significant financial relief to participating Settlement Class Members as compensation for their Released Claims and will relieve the Parties of the burden, uncertainty, and risk of continued litigation.

Courts review proposed class action settlements using a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38-39 (4th ed. 2002); *see, e.g., Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009); *GMAC Mortgage Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 492 (1st Dist. 1992); *Shawn Fauley, Sabon, Inc. v. Metro Life Ins. Co.*, 2016 IL App (2d) 150236, ¶¶ 4, 7, 15. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, § 11.25, at 38-39; *Armstrong v. Board of Sch. Dirs. Of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*; *Sabon*, 2016 IL App. (2d) 150236, ¶4. The preliminary approval hearing is not a fairness hearing, but rather a hearing to ascertain whether there is any reason to notify the class members of the proposed settlement based on the written submissions and informal presentation from the settling parties. *Manual for Complex Litigation*, § 21.632 (4th ed. 2002). If the Court finds the settlement proposal "within the range of possible approval," the case proceeds to the second step in the review process: the final approval hearing. *Newberg*, § 11.25, at 38-39.

Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide complete victory, given that parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (internal quotations and citation omitted); *GMAC*, 236 Ill. App. 3d at 493 ("The court in approving [a class action settlement] should not judge

the legal and factual questions by the same criteria applied in a trial on the merits"). There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, reasonable, and adequate." *Quick v. Shell Oil Co.*, 404 Ill. App. 3d 277, 282 (3d Dist. 2010); *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l.*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

The factors ultimately to be considered by a court are: "(1) the strength of the case for the plaintiffs on the merits, balanced against the money or other relief offered in the settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed." *City of Chicago*, 206 Ill. App. 3d at 972; *see also Armstrong*, 616 F.2d at 314. Of these considerations, the first is the most important. *Steinberg*, 306 Ill. App. 3d at 170; *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Even a preliminary application of these factors to this case demonstrates that the proposed settlement is fair, reasonable, and adequate. As to the first factor, the settlement in this case provides substantial material benefits to the Settlement Class: every Settlement Class Member will receive a monetary payment from the Settlement Fund of 1 / 322 of the Settlement Fund after deductions for administrative expenses, fees and costs, and an incentive award, or approximately $122.00.

While Plaintiffs believe they would likely prevail on their claims, they are also aware that Defendant has expressed a firm denial of their material allegations and the intent to pursue several legal and factual defenses including but not limited to: (i) whether Plaintiffs' claims should be dismissed; and (ii) whether the timekeeping system is subject to BIPA. If successful, these defenses would result in Plaintiffs and the proposed Settlement Class Members receiving no payment whatsoever. This reality is readily apparent, given the time and expense incurred in litigating issues of standing which were recently resolved.[2] Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member in the Settlement represents a truly excellent result for the Settlement Class.

The amount of the Settlement Fund and the payments to Settlement Class Members are particularly significant in light of the risks of ongoing litigation. If Defendant were to succeed on any of its defenses to liability against Plaintiffs' claims, Settlement Class Members would recover nothing. In addition to any defenses on the merits Defendant would raise, Plaintiffs would also otherwise be required to prevail on a class certification motion, which would be highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiffs and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. *Id*. at 582.

In the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial. Not only would the Parties have to

---

[2] On January 25, 2019, the Illinois Supreme Court clarified what is required to be "aggrieved" such that one may pursue a BIPA claim in *Rosenbach v. Six Flags Entm't Corp*.

undergo significant motion practice before any trial on the merits is even contemplated, but evidence and witnesses from across the country would have to be assembled for any trial. Further, given the complexity of the issues and the amount in controversy, the defeated party would likely appeal both any decision on the merits as well as on class certification. As such, the immediate and considerable relief provided to the Class under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of a long and drawn out litigation, trial, and appeals.

The second factor, Defendant's ability to pay, is neutral, as the exact damages measure of BIPA has not been determined. With the correct calculation of BIPA damages left uncertain, the potential for a very large judgment representing up to $5,000 "for each violation" could be devastating to Defendant or could result in no payments to Settlement Class Members.

With respect to factors four and six, there is no opposition to the Settlement, and due to the strength of this Settlement and the amount of the award that Settlement Class Members will receive, Plaintiffs expect little to no opposition to the Settlement by any Settlement Class Member in the future. Plaintiffs ardently approve the Settlement and believes that it is a fair and reasonable settlement in light of the defenses raised by Defendant and the potential risks involved with continued litigation.

Regarding factor five, there is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. *Newberg*, § 11.42; *see also Sabon, Inc.*, 2016 IL App (2d) 150236, ¶ 21 (finding no collusion where there was "no evidence that the proposed settlement was not the product of 'good faith, arm's-length negotiations'"). Here, the Settlement was reached only after highly-contested, arm's-length negotiations, between counsel for the Parties, which extended over the course of several months, and continued negotiations after a settlement in principle was reached. Such an involved settlement negotiation process underscores the non-collusive nature of the proposed Settlement. Finally, given the excellent result for the Settlement Class in terms of the

monetary relief made available it is clear that this Settlement was reached as a result of good-faith negotiations rather than any collusion between the Parties.

As to factor seven, Plaintiffs' counsel believe that the proposed Agreement is in the best interest of the Settlement Class Members because they will be provided an immediate payment instead of having to wait for the litigation and any subsequent appeals to run their course. Further, due to the defenses that Defendant has indicated that it would raise should the case proceed through litigation – and the resources that Defendant has committed to defend and litigate this matter through appeal, it is possible that the Settlement Class Members would receive no benefit whatsoever in the absence of this Settlement. Given Plaintiffs' counsel's extensive experience litigating similar class action cases in federal and state courts across the country, including dozens of other BIPA cases, this factor also weighs in favor of granting preliminary approval. *See GMAC*, 236 Ill. App. 3d at 497 (finding that the court should give weight to the fact that class counsel supports the class settlement in light of its experience prosecuting similar cases).

Finally, with respect to factor eight, as stated above the Settlement was reached following months of telephone mediations with a respected mediator. Had the Parties not reached an agreement, this case would proceed with the Parties being required to expend substantial resources to go forward with discovery, all while facing a significant risk regarding a decision from the Illinois Appellate Court that could result in Plaintiffs' claims being limited.[3]

The Court need not rule on a completely blank slate as to the fairness, reasonableness, and adequacy of the instant Settlement. For example, in *Sekura v. L.A. Tan Enterprises, Inc.*, No. 2015-

---

[3] *McDonald v. Symphony Bronzeville Park, LLC*, Case No. 1-19-2398 (1st Dist.) (interlocutory appeal of trial court order denying motion to dismiss based on Illinois Workers' Compensation Act preemption/exclusivity).

*Tims v. Black Horse Carriers*, Case No. 2019-CH-3522 (Cir. Ct. Cook. Cty. February 26, 2020) (Order by Judge Atkins certifying statute of limitations question for interlocutory appeal).

CH-16694 (Cir. Ct. Cook Cnty., Ill. 2016), the BIPA class settlement resulted in each class member being eligible to receive a *pro rata* share of a settlement fund that would have amounted to approximately $40 per person if each class member had submitted a valid claim. In *Carroll v. Crème de la Crème, Inc.*, No. 2017-CH-01624 (Cir. Ct. Cook Cnty., Ill. 2018), the settlement resulted in each class member being eligible to enroll in credit and identity monitoring services free of charge without further monetary relief. In *Taylor v. Sunrise Senior Living Mgmt., Inc.*, 2017-CH-15152 (Cir. Ct. Cook Cnty., Ill. 2018), the settlement resulted in class members receiving a gross amount of $115 or $40 depending on whether the claim accrued within two years or five years to account for older claims potentially being time-barred. In *Zepeda v. Intercontinental Hotels Group, Inc.*, No. 2018-CH-02140 (Cir. Ct. Cook Cnty., Ill. 2018), the settlement provided each class member being eligible to receive a *pro rata* share of a settlement fund that would amount to approximately $240 per person before deductions for administrative expenses, attorneys' fees and costs, and an incentive award. Here, Plaintiffs' Counsel estimates that each Settlement Class Member will receive approximately $122.00, after attorneys' fees, costs, administrative expenses, and service awards to Plaintiffs is deducted from the Settlement Fund. This result is fair, reasonable, and adequate and warrants Court approval.

      **B.**    **The Proposed Class Notice Should Be Approved.**

Under 735 ILCS 5/2-803, the Court may provide class members notice of any proposed settlement so as to protect the interests of the class and the parties. *See Cavoto v. Chicago Nat. League Ball Club, Inc.*, No. 1-03-3749, 2006 WL 2291181, at \*15 (Ill. App. 1st Dist. 2006) (collecting authorities and noting that "section 2-803 makes it clear that the statutory requirement of notice is not mandatory"). Notice must be provided to absent class members to the extent necessary to satisfy requirements of due process. *Id.* at \*15 (citing *Frank v. Teachers Ins. & Annuity Assoc. of America*, 71 Ill. 2d 583, 593 (1978)); *see also* Fed. R. Civ. P. 23(d)(2) (advisory committee note) ("mandatory notice…is designed to fulfill requirements of due process to which the class action procedure is of

course subject"). As explained by the United States Supreme Court, due process requires that the notice be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'" as well as "'describe the action and the plaintiffs' rights in it.'" *Sabon, Inc.*, 2016 IL App (2d) 150236, ¶ 36 (citing *Phillips Petroleum Co. v. Shuts*, 472 U.S. 797, 812 (1985)).

The proposed Notices in this case satisfy both the requirements of 735 ILCS 5/2-803 and due process. As set forth in detail in Section III.C., *supra*, the Settlement Agreement contemplates a notice plan that incorporates traditional paper notice, which is designed to reach as many potential Settlement Class Members as possible. The direct notice process should be very effective at reaching the Class Members given the relationship between Defendant and the Class Members. As such, the proposed methods of notice comport with 735 ILCS 5/2-803 and the requirements of due process. The proposed Notice attached as Exhibit A to the Settlement Agreement should be approved by the Court.

### C.    The Court Should Grant Class Certification for Settlement Purposes.

For settlement purposes only, the Parties have agreed that the Court should make preliminary findings and enter an Order granting provisional certification of the Settlement Class and appoint Plaintiffs and their counsel to represent the Class. "The validity of use of a temporary settlement class is not usually questioned." *Newberg*, §11.22. The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved[.]…An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

*Manual for Complex Litigation* (Fourth) § 21.612.

Before granting preliminary approval of a class action settlement, a court should determine that the proposed settlement class is a proper class for settlement purposes. *Id.* § 21.632; *Amchem*

*Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A class may be certified under Section 2-801 of the Illinois Code of Civil Procedure if the following "prerequisites" are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801; *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App (1st) 131465, ¶10, *rehearing denied* (June 4, 2015), *appeal denied*, 39 N.E. 3d 1001 (Ill. 2015); *Travel 100 Grp., Inc. v. Empire Cooler Serv. Inc.*, No. 03-CH-14510, 2004 WL 3105679, a t*2 (Ill. Cir. Ct. Cook Cty. Oct. 19, 2004). In this case, the Settlement Class, defined in the Settlement Agreement and in Section III.A., *supra*, meets all of the applicable certification requirements.

### 1. *The Class is Sufficiently Numerous and Joinder is Impracticable.*

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). "Although there is no bright-line test for numerosity, a class of forty is generally sufficient." *Hinman v. M & M Rental Center, Inc.*, 545 F. Supp. 2d 802, 805-06 (N.D. Ill. 2008); *Kulins v. Malco, A Microdot Co., Inc.*, 121 Ill. App. 3d 520, 530 (1st Dist. 1984) (finding that in Cook County, 47 class members was sufficient to satisfy numerosity); *Travel 100 Grp.*, 2004 WL 3105679, at *2 ("The potential class exceeds 3,000 members. The numerosity requirement is met") (citing *Wood River Area Development Corp. v. Germania Federal Svgs. And Loan*, 198 Ill. App. 3d 445 (5th Dist. 1990)). Here, the proposed Class encompasses approximately 322 Illinois individuals employed by Defendant. This Class is sufficiently numerous such that joinder would be impracticable, given the number of individuals, the potential geographic disbursement throughout the State, and that absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue since each individual member's claim is relatively small. *See Gordon*

13

*v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) ("In cases where there is a substantial number of potential claimants and the individual amounts of their claims are relatively small, Illinois courts have tended to permit the claims to proceed as a class action").

2.    *Common Questions of Law and Fact Predominate.*

Commonality, the second requirement for class certification, is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct. *See Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 673-74 (2nd Dist. 2006); *Steinberg v. Chicago Med. Sch.*, 69 Ill. 2d 320, 340-42 (1977); *Ellerbrake v. Campbell-Hausfield*, No. 01-L-540, 2003 WL 23409813, at *3 (Ill. Cir. Ct. July 2, 2003); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Further, where "the defendant allegedly acted wrongfully in the same basic manner as to an entire class…the common class questions predominate the case[.]" *Walczak*, 365 Ill. App. 3d at 674 (citing *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill. App. 3d 538, 548 (2003)).

In this case, all members of the proposed Class share common statutory BIPA claims arising out of standardized conduct: the alleged collection, storage, use, and dissemination of Settlement Class Members' biometrics without consent. Proving a BIPA violation would require the resolution of some of the same factual and legal issues, including: (1) whether the information taken from Settlement Class Members constituted biometric identifiers or biometric information as defined by BIPA; (2) whether such information was taken without the consent required under BIPA; (3) whether Defendant had a BIPA-compliant, publicly-available, written policy addressing retention and storage of biometric identifiers and information; and (4) whether such conduct violated BIPA. Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis…Such proof obviates the need to examine each class member's individual position." *Golon*

*v. Ohio Savs. Bank*, No. 98-cv-7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999). Here, the common questions resulting from Defendant's alleged conduct predominate over any individual issues that may exist and can be answered on a class-wide basis based on common evidence maintained by Defendant. Accordingly, this factor is satisfied.

3.    *Adequate Representation*

The third element of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interests of the class." 735 ILCS 5/2-801(3). The class representative's interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981). "The purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Walczak*, 365 Ill. App. 3d at 678 (citing *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1004 (2d Dist. 2004)); *Purcell & Wardrope Chtd. V. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988). The adequacy requirement is satisfied where "the interests of those who are parties are the same as those who are not joined" such that the "litigating parties fairly represent [them]" and where the "attorney for the representative party '[is] qualified, experienced and generally able to conduct the proposed litigation.'" *CE Design Ltd.*, 2015 IL App (1st) 131465, ¶ 16 (citing *Miner*, 87 Ill. 2d at 56)).

Here, Plaintiffs' interests are entirely representative of and consistent with the interests of the proposed Settlement Class: all have allegedly had their biometric data taken and used by Defendant in a manner inconsistent with the legal protections provided by BIPA. Plaintiffs' pursuit of this matter has demonstrated that they have been, and will remain, a zealous advocate for the Settlement Class. Thus, Plaintiffs have the same interests as the Settlement Class.

Similarly, proposed Class Counsel have regularly engaged in major complex litigation, have extensive experience in class action lawsuits, and indeed, have been among the forerunners in pursuing BIPA class actions on behalf of aggrieved employees. *See* Group Exhibit 2, Class Counsel Resumes; Plaintiffs' counsel has been appointed as class counsel in numerous complex class actions throughout the country. Accordingly, Plaintiffs' counsel will adequately represent the Settlement Class.

4.    *Fair and Efficient Adjudication of the Controversy.*

The final prerequisite to class certification is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Id.* at 204; *Purcell & Wardrope Chtd.*, 175 Ill. App. 3d at 1079 (the predominance of common issues [may] make a class action…a fair and efficient method to resolve the dispute"). Thus, the fact that numerosity, commonality and predominance, and adequacy of representation have all been demonstrated in the instant case makes it "evident" that the appropriateness requirement is satisfied as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress – particularly where the claims are small." *Gordon*, 224 Ill. App. 3d at 203-04; *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 1004 (1st Dist. 1991) ("In a large and impersonal society, class actions are often the last barricade of consumer protection"). A class action is superior to multiple individual actions "because litigation costs are high, the likely recovery is limited" and the individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action.

*Maxwell v. Arrow Fin. Servs., LLC*, No. 03-cv-1995, 2004 WL 719278, at *6 (N.D. Ill. Mar. 31, 2004). This is especially true in cases involving BIPA, which would otherwise result in many relatively small, individual claims. *See CE Design Ltd.*, 2015 IL App (1st) 131465, ¶¶ 27-28 (finding that a class action is a superior vehicle for resolving the class members' TCPA claims and that "[t]here is no doubt that certifying the class in this case, where there are potentially thousands of claimants, is an efficient and economical way to proceed and will prevent multiple suits and inconsistent judgments").

This case is particularly well-suited for class treatment because the claims of the Plaintiffs and the proposed Settlement Class Members involve identical alleged violations of a state statute for the alleged unauthorized collection, storage, use, and dissemination of Class Members' biometric data while failing to comply with BIPA. It is thus unlikely that individuals would invest the time and expense necessary to seek relief through individual litigation. Moreover, because the action will now settle, the Court need not be concerned with issues of manageability relating to trial. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Nor should the Court "judge the legal and factual questions" regarding certification of the proposed Settlement Class by the same criteria as a proposed class being adversely certified. *See GMAC*, 236 Ill. App. 3d at 493.

A class action is the superior method of resolving large-scale claims if it will "achieve economies of time, effort, and expense, and promote…uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Accordingly, a class action is the superior method of adjudicating this action and the proposed Settlement Class should be certified.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (1) appointing Plaintiffs as the Settlement Class Representatives; (2) appointing Peiffer Wolf Carr Kane & Conway, LLP and Stephan Zouras, LLP as Class Counsel; (3) preliminarily approving the proposed Settlement Agreement; (4) approving the form and methods of the proposed Notice; (5) ordering the issuance of Notice; and (6) granting such further relief as the Court deems reasonable and just.

Date:   April 27, 2021                    Respectfully Submitted,

By: */s/ Brandon M. Wise*
Brandon M. Wise
Paul A. Lesko
**PEIFFER WOLF CARR KANE & CONWAY, LLP**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
314-833-4825
bwise@peifferwolf.com
plesko@peifferwolf.com

Ryan F. Stephan
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, IL 60606
Ph: 312-233-1550
Email: rstephan@stephanzouras.com
Email: hjenkins@stephanzouras.com

**ATTORNEYS FOR PLAINTIFFS
AND THE PUTATIVE CLASS**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2021 2020 I filed the foregoing document with the clerk of the Court using the Illinois E-Filing System, which should further distribute a true and accurate copy of the foregoing to all counsel of record.

*/s/ Brandon M. Wise*

18

FILED
Montgomery Co. Circuit Court
4th Judicial Circuit
Date: 4/27/2021 2:21 PM
Holly Lemons

# EXHIBIT 1

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
COUNTY OF MONTGOMERY

| | |
|---|---|
| BRET BRAY AND JASON HOUSMAN, individually and on behalf of all others similarly situated, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| HIXSON LUMBER SALES OF ILLINOIS, INC., | ) ) |
| Defendant. | |

Case No. 2019-L-9

## STIPULATION OF CLASS ACTION SETTLEMENT

This Stipulation of Class Action Settlement is entered into by and among Plaintiffs Bret Bray and Jason Housman ("Plaintiffs"), individually and on behalf of all others similarly situated, and Defendant Hixson Lumber Sales of Illinois. ("Hixson") (Plaintiffs and Hixson are referred to individually as a "Party" and collectively referred to as the "Parties"). This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims upon and subject to the terms and conditions hereof, and is subject to the approval of the Court.

## RECITALS

A.      Plaintiffs filed a putative class action complaint against Hixson in this Court, alleging a claim for damages and an injunction under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq. ("BIPA"), related to the alleged unauthorized collection, storage, and dissemination of finger scan data.

B.      Following the filing of the lawsuit, the Parties to this Agreement began discussing the potential for a class wide settlement and exchanged information on the underlying facts of the

case and the size of the class. After considerable arms-length negotiations, the Parties were able to reach an agreement on the terms of a class-wide settlement.

C.     Plaintiffs and Class Counsel conducted an examination of the law and facts relating to the allegations in the complaint and Hixson's potential defenses. Plaintiffs believes that each claim asserted in the Action has merit, that Plaintiffs would have ultimately succeeded in obtaining adversarial certification of the proposed Settlement Class, and that Plaintiffs would have prevailed on the merits at summary judgment or at trial. But Plaintiffs and Class Counsel recognize that Hixson has raised factual and legal defenses in the Action that presented a risk that Plaintiffs may not prevail and/or that a Class might not be certified for trial. Class Counsel have also taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulty and delay inherent in such litigation. This Agreement presents an exceptional result for the Settlement Class, and one that will be provided to the Class without delay. Therefore, Plaintiffs believes that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to the terms and conditions set forth in this Settlement Agreement.

D.     Hixson denies all allegations of wrongdoing and liability, and has asserted defenses to Plaintiffs' claims, including but not limited to that Plaintiffs' claims are barred by the statute of limitations and/or the claims are barred the Illinois Workers' Compensation Act.  Hixson believes its position has merit and that Defendant ultimately would prevail on its defenses.  Nevertheless, Hixson has concluded that this Settlement Agreement is desirable to avoid the time, risk, and expense of defending protracted litigation and advancing its preemption arguments.  Hixson, without admitting to the lack of merit with respect to any defenses, desires to resolve finally and completely the pending and potential claims of Plaintiffs and the Settlement Class.  Hixson agrees

to certification of the Settlement Class for settlement purposes only and in no way concedes that had the Parties litigated class certification that Plaintiffs would have ultimately succeeded. If the terms of this Agreement are not ultimately approved Defendant retains all rights and defenses to Plaintiffs' claims including the right to contest class certification and/or to assert its preemption defenses.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs, the Settlement Class, and Hixson that, subject to the Court approval after a hearing as provided for in this Settlement, and in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Released Claims shall be fully and finally compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth in this Settlement Agreement.

<u>**AGREEMENT**</u>

## 1.    DEFINITIONS

As used herein, in addition to any definitions set forth elsewhere in this Settlement Agreement, the following terms shall have the meanings set forth below:

1.1    "Action" means the case captioned Bret Bray, individually, and on behalf of others situated v. Hixson Lumber Sales of Illinois, Inc., Case No. 2019-L-9.

1.2    "Agreement" or "Settlement Agreement" means this Stipulation of Class Action Settlement.

1.3    "Class Counsel" means attorneys Brandon Wise of Peiffer Wolf Carr Kane & Conway, APLC and Ryan Stephan and Haley Jenkins of Stephan Zouras, LLP.

1.4    "Class Representative" means the named Plaintiffs in the Action Brett Bray and Jason Housman.

3

1.5    "Court" means the Circuit Court of Montgomery County, Illinois, and the Judge assigned to the Action.

1.6    "Hixson" or "Defendant" means Hixson Lumber Sales of Illinois.

1.7    "Hixson Counsel" means Hinshaw & Culbertson LLP.

1.8     "Effective Date" is defined as set forth in Paragraph 9.1.

1.9    "Cy Pres" means the designated cy pres recipient Land of Lincoln Legal Aid.

1.10     "Fee Award" means the amount of attorneys' fees and reimbursement of costs to Class Counsel awarded by the Court to be paid out of the Settlement Fund.

1.11    Final Approval Hearing" means the hearing before the Court where the Parties will request that the Final Judgment be entered by the Court finally approving the Settlement as fair, reasonable and adequate, and approving the Fee Award and the incentive award to the Class Representative.

1.12    "Final Judgment" means the final judgment to be entered by the Court approving the settlement of the Action in accordance with this Settlement Agreement after the Final Approval Hearing.

1.13    "Notice" means the notice of this proposed Settlement and Final Approval Hearing, which is to be disseminated to the Settlement Class substantially in the manner set forth in this Settlement Agreement, fulfills the requirements of Due Process and 735 ILCS 5/2-801, and is substantially in the form of Exhibit A attached hereto.

1.14    "Notice Date" means the date upon which the Notice is first disseminated to the Settlement Class, which shall be a date no later than twenty-eight (28) days after entry of Preliminary Approval.

1.15    "Objection/Exclusion Deadline" means the date by which a written objection to the Settlement Agreement or a request for exclusion submitted by a person within the Settlement Class must be filed with the Court and/or postmarked, which shall be designated as a date forty two (42) days after the Notice Date, as approved by the Court. The Objection/Exclusion Deadline will be set forth in the Notice.

1.16    "Plaintiffs" means Plaintiffs, Bret Bray and Jason Housman.

1.17    "Preliminary Approval" means the Court's Order preliminarily approving the Agreement, certifying the Settlement Class for settlement purposes, and approving the form and manner of the Notice, substantially in the form of Exhibit B attached hereto.

1.18    "Released Parties" means Hixson Lumber Sales of Illinois, Inc., all of its parents, successors, assigns, affiliates, wholly-owned subsidiaries, present or former heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, holding companies, investors, sister and affiliated companies, divisions, associates, affiliated and related entities, employers, employees, agents, representatives, consultants, independent contractors, directors, managing directors, officers, partners, principals, members, attorneys, vendors, accountants, fiduciaries, financial and other advisors, investment bankers, insurers, reinsurers, employee benefit plans, underwriters, shareholders, lenders, auditors, investment advisors, and any and all present and former companies, firms, trusts, corporations, officers, directors, other individuals or entities in which Hixson has a controlling interest or which is affiliated with any of them, or any other representatives of any of these persons and entities, as well as all persons acting by, through, under or in concert with any of these persons or entities.

1.19    "Plaintiffs Releasing Parties" means Plaintiffs and his present or past heirs, executors, estates, administrators, assigns, agents, consultants, independent contractors, insurers,

1020974\306902687.v1

attorneys, accountants, financial and other advisors, investment bankers, underwriters, lenders, and any other representatives of any of these persons and entities.

1.20   "Class Member Releasing Parties" means Settlement Class Members and their respective present or past heirs, executors, estates, administrators, assigns, agents, consultants, independent contractors, insurers, attorneys, accountants, financial and other advisors, investment bankers, underwriters, lenders, and any other representatives of any of these persons and entities.

1.21   "Settlement Administration Expenses" means the expenses incurred by the Settlement Administrator in or relating to administering the Settlement, providing Notice, mailing checks for Settlement Payments, and other such related expenses, with all such expenses to be paid from the Settlement Fund.

1.22.   "Settlement Administrator" means   JND Legal Administration or such other administrator as agreed to by the parties, which will provide the Notice and sending of Settlement Payments to Settlement Class Members and other requested duties.

1.23   "Settlement Class" means

All persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant from five years preceding the filing of this action to the date the Court grants preliminary approval in violation of BIPA as alleged in the complaint.

Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this action and members of their families, (2) persons who properly execute and file a timely request for exclusion from the class, (3) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and ( 4) the legal representatives, successors or assigns of any such excluded persons.

1.24    "Settlement Class Member" or "Class Member" means a person who falls within the definition of the Settlement Class and who does not submit a valid request for exclusion from the Settlement Class.

1.25    "Settlement Fund" means the amount paid by or on behalf of Hixson into the Account established by the Settlement Administrator. The Settlement Fund is Seventy-Seven Thousand Dollars ($77,000) and shall be paid to the Settlement Administrator on the Effective Date.  The Settlement Fund shall be used to pay (1) monetary relief to the Settlement Class members, (2) notice and administration costs, (3) Class Counsel's attorneys' fees and costs, and (4) an incentive award.

1.26    Intentionally left blank.

1.27    "Settlement Payment" means a pro rata portion of the Settlement Fund less any Fee Award, incentive award to the Class Representatives, and Settlement Administration Expenses.

## 2.    SETTLEMENT RELIEF

2.1    **Settlement Payments to Settlement Class Members.**

(a)    The Settlement Administrator shall send each Settlement Class Member a Settlement Payment by check within twenty-eight (28) days of the Effective Date via First Class U.S. Mail to their last known mailing address, as updated through the NCOA database if necessary by the Settlement Administrator.

(b)    All Settlement Payments will state on the face of the check that the check will expire and become null and void unless cashed within ninety (90) days after the date of issuance.

To the extent that a check issued to a Settlement Class Member is not cashed within ninety (90) days after the date of issuance, the check will be void, and the funds will be paid to

1020974\306902687.v1

the *cy pres*. The *cy pres* recipient will not be entitled to more than $5000. If more than $5000 remains, the parties will identify additional *cy pres* recipient(s) to receive such funds.

3.    **RELEASE**

3.1    **The Class Representative's Release**. Upon the Effective Date, and in consideration of the settlement relief described herein, the Plaintiffs Releasing Parties, and each of them, shall be deemed to have released, and by operation of the Final Judgment shall have, fully, finally, and forever, released, relinquished and discharged the Released Parties from all actual, potential, filed, unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra-contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on the Illinois Biometric Information Privacy Act or any other federal, state, local, statutory or common law or any other law, including the law of any jurisdiction outside the United States, from the beginning of the world to the date hereof, including but not limited to all claims which were made or which could have been made by the Class Representative in this Action.

3.2    <u>Release for Class Members</u>.  Upon the Effective Date, and in consideration of the settlement relief described herein, the Class Member Releasing Parties, and each of them shall be deemed to have released and by operation of the Final Judgment shall have fully finally and forever, released, relinquished and discharged all actual, potential, filed, unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra-contractual claims, damages,

1020974\306902687.v1

punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on the Illinois Biometric Information Privacy Act or other federal, state, local, statutory or common law or any other law, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, arising out of or relating to the facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding biometric and/or finger scan data.

3.3    The claims released in the Class Representative's Release and the claims released in the Release for Class Members are collectively referred to as the "Released Claims."

## 4.    NOTICE TO THE CLASS

4.1    The Notice shall include:

(a)    *Class List*.  Hixson shall provide the Settlement Administrator with a list of all names and last known U.S. mail addresses and email addresses (to the extent available) of all persons in the Settlement Class (the "Class List") as soon as practicable, but by no later than twenty-one (21) days after the Court grants Preliminary Approval of the Settlement. The Settlement Administrator shall keep the Class List and all personal information obtained therefrom, including the identity and mailing and email addresses of all persons strictly confidential. The Class List may not be used by the Settlement Administrator for any purpose other than advising specific individual Settlement Class Members of their rights, mailing Settlement Payments, and otherwise effectuating the terms of the Settlement Agreement or the duties arising thereunder, including the provision of Notice of the Settlement.

1020974\306902687.v1

(b)      **Notice**.  No later than the Notice Date, the Settlement Administrator shall send Notice via U.S. Mail substantially in the form attached as Exhibit A to all persons in the Settlement Class to the most recent mailing address for the Class Member in the possession of Defendant.  To the extent that a mailing is returned the Administrator shall follow up through telephone or other reasonably practicable means that the Administrator deems appropriate, to identify the current location of such individual so long as the cost of such follow up does not exceed the cost of the Administrator's budget for administering this matter.  Hixson's counsel shall provide the Administrator with the last known telephone number of any Class Member whose notice is returned as undeliverable, upon request.

4.2      The Notice shall advise the Settlement Class of their rights under the Settlement, including the right to be excluded from or object to the Settlement Agreement or its terms as detailed in Exhibit A.

4.3      **Right to Intervene and Object or Comment**.  Any member of the Settlement Class who intends to intervene and object to this Settlement Agreement must present the objection in writing, which must be personally signed by the objector and must include: (a) the Settlement Class Member's full name and current address, (b) a statement that he or she believes himself or herself to be a member of the Settlement Class, (c) the specific grounds for the objection, (d) all documents or writings that the Settlement Class Member desires the Court to consider, (e) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection; and (f) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel, who must

10

file an appearance or seek *pro hac vice* admission). All written objections must be filed with the Court and postmarked, e-mailed or delivered to Class Counsel and Hixson's Counsel no later than the Objection/Exclusion Deadline. Any Settlement Class Member who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Section and as detailed in the Notice, and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to this Settlement Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of this Settlement Agreement by appeal or other means and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or any other action or proceeding.

      4.4    **Right to Request Exclusion**.  Any Person in the Settlement Class may submit a request for exclusion from the Settlement on or before the Objection/Exclusion Deadline. To be valid, any request for exclusion must (a) be in writing; (b) identify the name of the case and case number, *Bray v. Hixson Lumber Sales of Illinois*, Case No. 2019-L-9 (Montgomery County), (c) state the full name and current address of the Person in the Settlement Class seeking exclusion; (d) be physically signed by the Person(s) seeking exclusion; and (e) be postmarked or received by the Settlement Administrator on or before the Objection/Exclusion Deadline. Each request for exclusion must also contain a statement to the effect that "I/We hereby request to be excluded from the proposed Settlement Class in *Bray v. Hixson Lumber Sales of Illinois*, Case No. 2019-L-9 (Montgomery County)."  A request for exclusion that does not include all of the foregoing information, that is sent to an address other than that designated in the Notice, or that is not postmarked or delivered to the Settlement Administrator within the time specified, shall be invalid and the persons serving such a request shall be deemed to remain Settlement Class Members and

1020974\306902687.v1

shall be bound as Settlement Class Members by this Settlement Agreement, if approved. Any Person who elects to request exclusion from the Settlement Class shall not (a) be bound by any orders or Final Judgment entered in the Action, (b) receive a Settlement Payment under this Settlement Agreement, (c) gain any rights by virtue of this Settlement Agreement, or (d) be entitled to object to any aspect of this Settlement Agreement. No Person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs.

**5.    SETTLEMENT ADMINISTRATION**

5.1    Settlement Administrator's Duties.

(a)    *Dissemination of Notices*.  The Settlement Administrator shall disseminate the Settlement Class Notice as provided in Section 4 of this Settlement Agreement.

(b)    *Maintenance of Records*.  The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Upon request, the Settlement Administrator shall provide Class Counsel and Hixson's Counsel with information concerning Notice, administration and implementation of the Settlement.

(c)    *Receipt of Requests for Exclusion*. The Settlement Administrator shall receive requests for exclusion from Persons in the Settlement Class and provide to Class Counsel and Hixson's Counsel a copy thereof within five (5) days of the Objection/Exclusion Deadline. If the Settlement Administrator receives any requests for exclusion or other requests from Settlement Class Members after the deadline for the

1020974\306902687.v1

submission of requests for exclusion, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Hixson's Counsel.

(d)    *Timing of Settlement Payments*. The Settlement Administrator shall make all Settlement Payments contemplated in Section 2 of this Settlement Agreement by check and mail them to Settlement Class Members within twenty-eight (28) days after the Effective Date.

## 6.    PRELIMINARY APPROVAL AND FINAL APPROVAL

6.1    Preliminary Approval. Promptly after execution of this Settlement Agreement, Class Counsel shall submit this Settlement Agreement to the Court and shall move the Court to enter an order granting Preliminary Approval, which shall include, among other provisions, a request that the Court:

(a)    Appoint Plaintiffs as Class Representatives of the Settlement Class;

(b)    Appoint Class Counsel to represent the Settlement Class;

(c)    Certify the Settlement Class under 735 ILCS 5/2-801 et seq. for settlement purposes only;

(d)    Preliminarily approve this Settlement Agreement for purposes of disseminating Notice to the Settlement Class;

(e)    Approve the form and contents of the Notice and the method of its dissemination to members of the Settlement Class; and

(f)    Schedule a Final Approval Hearing to review comments and/or objections regarding this Settlement Agreement, to consider its fairness, reasonableness and adequacy, to consider the application for a Fee Award and incentive awards to the Class Representative, and to consider whether the Court shall issue a Final Judgment approving

1020974\306902687.v1

this Settlement Agreement, to consider Class Counsel's application for the Fee Award and the incentive award to the Class Representative, and dismissing the Action with prejudice.

6.2    **Final Approval**.  After Notice to the Settlement Class is given, Class Counsel shall move the Court for entry of a Final Judgment, which shall include, among other provisions, a request that the Court:

(a)    find that it has personal jurisdiction over all Settlement Class Members and subject matter jurisdiction to approve this Settlement Agreement, including all attached Exhibits;

(b)    approve the Settlement as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Settlement according to its terms and conditions; and declare the Settlement to be binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and all other Settlement Class Members and Releasing Parties;

(c)    find that the Notice implemented pursuant to the Settlement Agreement (1) constitutes the best practicable notice under the circumstances, (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action and their rights to object to or exclude themselves from this Settlement Agreement and to appear at the Final Approval Hearing, (3) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and (4) fulfills the requirements of Due Process and 735 ILCS 5/2-801;

1020974\306902687.v1

(d)     find that the Class Representative and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement;

(e)     dismiss the Action on the merits and with prejudice, without fees or costs to any Party except as provided in this Settlement Agreement;

(f)     incorporate the Release set forth above, make the Release effective as of the Effective Date, and forever discharge the Released Parties as set forth herein;

(g)     permanently bar and enjoin all Settlement Class Members who have not been properly excluded from the Settlement Class from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any lawsuit or other action in any jurisdiction based on the Released Claims;

(h)     authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement and its implementing documents (including all Exhibits to this Settlement Agreement) that (i) shall be consistent in all material respects with the Final Judgment, and (ii) do not limit the rights of Settlement Class Members;

(i)     without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

(j)     incorporate any other provisions, consistent with the material terms of this

(k)     Settlement Agreement, as the Court deems necessary and just.

15

6.3    **Cooperation**.  The Parties shall, in good faith, cooperate, assist and undertake all reasonable actions and steps in order to accomplish these required events on the schedule set by the Court, subject to the terms of this Settlement Agreement.

## 7.    TERMINATION OF THE SETTLEMENT AGREEMENT

7.1    **Termination**.  Subject to Paragraph 9 below, the Class Representative, on behalf of the Settlement Class, or Hixson, shall have the right to terminate this Agreement by providing written notice of the election to do so to all other Parties hereto within ten (10) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant Final Approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the appellate court or the Supreme Court; or (v) the date upon which an Alternative Judgment, as defined in Paragraph 9.1 of this Agreement, is modified or reversed in any material respect by the appellate court or the Supreme Court.

## 8.    INCENTIVE AWARD AND CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

8.1    Hixson agrees not to oppose Class Counsel's request for their reasonable attorneys' fees and unreimbursed expenses incurred in or related to the Action as the Fee Award. The amount of the Fee Award shall be determined by the Court based on petition from Class Counsel. Class Counsel has agreed, with no consideration from Hixson, to limit their request for attorneys' fees to twenty seven percent (27%) of the Settlement Fund plus costs. Payment of the Fee Award shall be made from the Settlement Fund and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Section shall remain in the Settlement Fund and be distributed to Settlement Class Members.

1020974\306902687.v1

8.2    The Fee Award shall be payable within five (5) business days after the Effective Date.

8.3    Hixson agrees to pay the each Class Representative, Bret Bray and Jason Housman, an amount not to exceed Five-Thousand Dollars ($5,000.00) from the Settlement Fund. Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Section shall be distributed to Settlement Class Members. Defendant shall make the payment within five (5) business days after the Effective Date.

8.4    Defendant will pay or have the Settlement Fund paid to the Settlement Administrator on the Effective Date.

## 9.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.

9.1    The "Effective Date" means five business day following the day on which this Settlement shall become effective when all of the following have occurred:

(a)    The Court enters the Final Approval Order which meets the requirements of 735 ILCS 5/2-801 through 2-807, and including the following:

(i)    approves the Settlement as fair, reasonable and adequate to the Class;

(ii)    finds that this Settlement is made in good faith; and

(iii)    dismisses with prejudice Plaintiffs' claims and the claims of the Class.

And

(b)    One of the following occurs:

(i)    if the Final Approval Order is not appealed, the expiration of five (5) business days after the date that the Final Approval Order becomes a final and non-appealable order; or

17

(ii) if the Final Approval Order is appealed, and the appeal results in a disposition that affirms the Final Approval Order, the expiration of five (5) business days after the date that the disposition becomes a final and non-appealable order.

9.2     If some or all of the conditions specified in Section 9.1 are not met, or in the event that this Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Agreement shall be canceled and terminated subject to Section 9.3, unless Class Counsel and Hixson's Counsel mutually agree in writing to proceed with this Settlement Agreement. If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Settlement Agreement on notice to all other Parties. Notwithstanding anything herein, the Parties agree that the Court's decision as to the amount of the Fee Award to Class Counsel set forth above or the incentive award to the Class Representative, regardless of the amounts awarded, shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Agreement.

9.3     If this Settlement Agreement is terminated or fails to become effective for the reasons set forth above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement. In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, nunc pro tunc, and the Parties shall be returned to the status quo ante with respect to the Action as if this Settlement Agreement had never been entered into.

9.4     The resolution of this dispute and the terms of this Agreement are based on unique facts and circumstances relating to the underlying issues and the procedural posture of the case at the time of settlement.  Therefore, nothing in this Agreement is intended to reflect a general litigation approach or an admission by either Party as to the validity of any claims and defenses or

1020974\306902687.v1

with respect to the right of Hixson to assert defenses in any later, unrelated action. Further, the Parties agree that nothing in this Agreement could be used by non-parties to assert estoppel claims against Hixson based on the settlement of this dispute.

## 10. MISCELLANEOUS PROVISIONS.

10.1 The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement. Class Counsel and Hixson's Counsel agree to cooperate with one another in seeking entry of an order granting Preliminary Approval of this Agreement and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement Agreement.

10.2 Each signatory to this Agreement represents and warrants (a) that he, she, or it has all requisite power and authority to execute, deliver and perform this Settlement Agreement and to consummate the transactions contemplated herein, (b) that the execution, delivery and performance of this Settlement Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory, and (c) that this Settlement Agreement has been duly and validly executed and delivered by each signatory and constitutes its legal, valid and binding obligation.

10.3 The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiffs and the Settlement Class, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand. Accordingly, the Parties agree not to assert in any forum

19

that the Action was brought by Plaintiffs or defended by Hixson, or each or any of them, in bad faith or without a reasonable basis.

10.4    The Parties have relied upon the advice and representation of counsel, selected by them, concerning the claims hereby released. The Parties have read and understand fully this Settlement Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

10.5    Whether the Effective Date occurs or this Settlement is terminated, neither this Settlement Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the settlement:

(a)    is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

(b)    is, may be deemed, or shall be used, offered or received against Hixson as, an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

(c)    is, may be deemed, or shall be used, offered or received against Plaintiffs or the Settlement Class, or each or any of them as an admission, concession or evidence of, the infirmity or strength of any claims asserted in the Action, the truth or falsity of any fact

1020974\306902687.v1

alleged by Hixson, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

(d) is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. However, the settlement, this Settlement Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Settlement Agreement and/or settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Settlement Agreement. Moreover, if this Settlement Agreement is approved by the Court, any party or any of the Released Parties may file this Settlement Agreement and/or the Final Judgment in any action that may be brought against such party or Parties in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim;

(e) is, may be deemed, or shall be construed against Plaintiffs and the Settlement Class, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

(f) is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiffs and the Settlement Class, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiffs' claims

1020974\306902687.v1

DocuSign Envelope ID: F52E0E44-556E-4B87-A34E-56B3CFE6E42B

are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

10.6    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.7    The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Settlement Agreement.

10.8    All of the Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by reference.

10.9    This Settlement Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.10   Except as otherwise provided herein, each Party shall bear its own attorneys' fees and costs incurred in any way related to the Action.

10.11   Plaintiffs represents and warrants that Plaintiffs has not assigned any claim or right or interest relating to any of the Released Claims against the Released Parties to any other Person or party and that they are fully entitled to release the same.

10.12   Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

10.13   This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

10.14   Signature by digital, facsimile, or in PDF format will constitute sufficient execution of this Settlement Agreement. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

10.15   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

10.16   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without reference to the conflicts of laws provisions thereof.

10.17   This Settlement Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties. Whereas all Parties have contributed substantially and materially to the preparation of this Settlement Agreement, it shall not be construed more strictly against one Party than another.

10.18   Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

1020974\306902687.v1

Dated: 3/30/2021 _____

By: _____
Bret Bray
(signature)

Name: _____
Bret Allen Bray
(printed)


Dated: 2/3/2021 _____

By: _____
Jason Housman
(signature)

Name: _____
Jason Houseman
(printed)


Counsel for Class

Dated: 3/31/2021 _____

By: _____
Haley Jenkins
(signature)

Name: _____
Haley Jenkins
(printed)


| | | Hixson Lumber Sales of Illinois, Inc. |
|---|---|---|
| Dated: _____ | By: | _____ (signature) |
| | Name: | _____ (printed) |

24