# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BRET BRAY, individually and on behalf of all others similarly situated, )<br>)<br>)<br>)<br>Bray,  )<br>)<br>v.  )<br>)<br>LATHEM TIME CO.,  )<br>)<br>Lathem. | Case No. 1:22-cv-01748-JPB<br><br>Judge J. P. Boulee |

## REPLY IN SUPPORT OF LATHEM TIME CORP.'S RULE 12(B)(6) MOTION TO DISMISS

{10524465:2 }

## I. INTRODUCTION[1]

As Lathem explained in its opening brief, Bray's claims should be dismissed because he released his claims against Lathem in the *Hixson* Settlement Agreement, and he also failed to state a claim in Count II for violation of Section 15(b) of the Illinois Biometric Information Privacy Act ("BIPA"). (Memo. at 7-16.)

Bray fails to rebut either of those points. Instead, he inappropriately argues what he supposedly intended when he executed the Settlement Agreement, ignoring the agreement's text and employing an irrelevant legal standard that does not apply to the broad and unqualified release at issue here. (Resp. at 4-7.) And as to Count II, although Bray concedes that BIPA Section 15(b) requires a defendant's active involvement in data collection, he fails to identify any allegations in his Complaint that Lathem in fact actively collected his biometric data. (*Id.* at 7-9.)

Accordingly, Lathem's Motion to Dismiss should be granted.

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Memorandum of Law in Support of Defendant Lathem Time Corp.'s Rule 12(b)(6) Motion to Dismiss (Dkt. No. 11-1), which is cited as "(Memo. at __)." Plaintiff's Response in Opposition to Defendant Lathem Time Co.'s Motion to Dismiss (Dkt. No. 14) is cited herein as "(Resp. at __)."

## II.   ARGUMENT

Bray does not dispute that: (a) Lathem's arguments can be raised and decided under Rule 12(b)(6); (b) the Court can take judicial notice of the filings in the *Hixson* case, including the Settlement Agreement; (c) the Settlement Agreement and Release must be interpreted under Illinois law; and (d) Lathem was the Hixson "vendor" at issue with respect to the alleged collection of his biometric data.

Instead, Bray argues that he did not intend to release his claims against Lathem and that he adequately stated a claim in Count II. Bray's arguments are misplaced. As shown below: (A) Bray's supposed intent in signing the Settlement Agreement is irrelevant, and also he applies an incorrect legal standard; and (B) Bray overstates the allegations in his Complaint with respect to Count II.

**A.   Bray's Intent Is Irrelevant and He Applies an Incorrect Legal Standard.**

When Bray executed the Settlement Agreement with Hixson, he released "all actual, potential, filed, unfiled, known or unknown . . . claims, demands, liabilities, rights, [and] causes of action" against almost 50 different categories of individuals and entities with some connection to Hixson, including Hixson's "vendors." (Memo. at 11-13.) Under Illinois law, such "comprehensive language" in a settlement agreement releases all claims except for those "clearly specif[ied]." (*Id.* at 12 (quoting *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984).) And Bray concedes

– and, indeed, premises his argument on the notion – that the Settlement Agreement "fails to include any mention" of Lathem. (Resp. at 7.) That concession is dispositive: If Lathem is not even mentioned in the comprehensive Release, Bray's claims against Lathem cannot be "clearly specified" in a way that preserves them.

In any event, Bray offers two ill-conceived arguments as to why he supposedly did not release his claims, neither of which holds water.

*First*, Bray improperly attempts to elevate his own purported intent in signing the Settlement Agreement over the text of the Agreement itself, arguing that he did not intend to release his claims against Lathem. (Resp. at 4-7.) This, he says, is evidenced by the fact that the suit against Lathem was pending in Georgia when he executed the Settlement Agreement, which he claims reflects his intent to pursue two separate actions. (*Id.* at 6.) That argument is irrelevant and wrong. It's irrelevant because the text of an unambiguous contract controls its meaning, not the supposed intent of the parties at the time they entered into it. *Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984).[2] And it's wrong because Bray knew his case against Lathem was

---

[2] "Where a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." *Id.*

{10524465:2}                          3

pending when he executed the Settlement Agreement that released "all . . . filed" actions. (*See* Memo., Ex. B, at Ex. 1 ¶ 3.1; Ex. C ¶ 17 (release applied "in[] all pending and future lawsuits").) Indeed, if Bray's intent were relevant, given the express application of the *Hixson* Release and Final Order to all "filed" and "pending" claims, the only reasonable inference is that Bray intended to release Lathem – which is consistent with the fact that he had effectively abandoned his claims against Lathem by letting this case sit unserved and idle in Cobb County for over a *year* before signing the *Hixson* Settlement Agreement (*id.* at 4-5).

Bray's sole attempt to ground his intent-based argument in the text of the *Hixson* Settlement Agreement is debunked by the very text he relies on. Specifically, Bray argues that Paragraph 1.18 of the Agreement "takes pains" to include only entities "affiliated with and related to Hixson Lumber Sales" and purportedly excludes Lathem as an "unrelated third-party entit[y]." (Resp. at 6-7.) But the fact that the Release includes categories like vendors belies Bray's argument, because vendors ordinarily are not "affiliated with or related to" their customers. Indeed, the list of "Released Parties" in Paragraph 1.18 encompasses a vast array of other individuals and entities that plainly are not "affiliated with or related to" Hixson, including its "consultants, . . . attorneys, . . . accountants, fiduciaries, financial and other advisors, investment bankers, insurers, reinsurers, . . . underwriters, . . . lenders,

auditors, [and] investment advisors." (Memo., Ex. B. at Ex. 1 ¶ 1.18.) Given its breadth, the Release cannot credibly be described as limited to affiliates and related entities of Hixson. And the uncontested fact that Lathem was a vendor to Hixson is not a reason to *exclude* it from the Release; on the contrary, it's the reason to *include* Lathem – because "vendors" are expressly identified as Released Parties.

*Second*, Bray baselessly argues the "third-party beneficiary" doctrine applies to release agreements, such that a release is effective only as to non-parties that are expressly and individually named in the contract. (Resp. at 5-6.) Tellingly, Bray cites no cases applying the "third-party beneficiary" doctrine where a defendant invokes a release in defense of a lawsuit, and he offers no explanation for why the doctrine was not at issue in the host of cases Lathem cited in its opening brief. Instead, Bray cites cases (at 5-6) addressing suits *brought* by third parties to a contract to *enforce* an affirmative entitlement under the contract – none of which concerned release agreements. *See Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927 (11th Cir. 2013) (lease); *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356 (11th Cir. 2007) (sponsorship contract); *Gen. Elec. Credit Corp. v. Home Indem. Co.*, 309 S.E.2d 152 (Ga. App. 1983) (insurance contract); *Hacker v. Shelter Ins. Co.*, 902 N.E.2d 188 (Ill. App. Ct. 2009) (insurance

contract); *Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E.2d 106 (Ill. App. Ct. 1989) (contractor-subcontractor agreement). Those cases are inapposite.

The absence of supporting law is no surprise, because Bray's proffered rule would produce absurd results. This case is a perfect example of that. In addition to Hixson's "vendors," the Release includes numerous categories of third parties, including Hixson's "employees, . . . officers, . . . attorneys, . . . accountants, . . . insurers, . . . lenders," and "entities in which Hixson has a controlling interest," (Memo., Ex. B, at Ex. 1 ¶ 1.18.) The Release does not, however, "expressly include" any individual or other entity, as Bray argues is necessary for it to be effective. Consequently, were Bray's "third-party beneficiary" theory actually the law, Bray would be free to sue any member of these categories – effectively negating the Release as to every entity other than Hixson itself, despite the plain text of the Release and clear intent of the parties in drafting it. Such an inflexible rule would eliminate the ability of parties to negotiate categorical releases – which are commonplace, practical, and necessary where releasees are too numerous or unknown to specifically name – thus imposing "limitations not expressed in the general language of [] settlement agreement[s]" and making "those who desire to end litigation wary and uncertain of what they would accomplish by settlement." *Rakowski*, 472 N.E.2d 795. That is not the law in Illinois (or likely anywhere else).

In sum, Bray fails to analyze the Release under the correct legal standard and relies on inapplicable law to reach absurd results. Bray released his claims against Lathem when the *Hixson* Court entered the Final Order that gave effect to the Settlement Agreement and Release. His claims should be dismissed with prejudice.

**B.     Bray Overstates the Allegations in His Complaint.**

Even if Bray had not released his claims, Count II still should be dismissed. As Lathem explained in its opening brief, BIPA Section 15(b) applies only to the active collection of biometrics, and Bray fails to allege facts showing Lathem actively collected anything from him. (Memo. at 13.) Bray does not meaningfully dispute the former point, but on the latter he argues he did allege Lathem actively collected his biometrics. (Resp. at 8-9.) In doing so, Bray overstates his allegations.

The Complaint lacks the details that Bray tries to impart on it through his Response. Bray claims the Complaint "specifically alleges that [Lathem] . . . *actively* scanned [his] face, identified his facial geometry, and collected his biographic information," and that these supposed allegations "clearly show that [Lathem] was actively involved in the capture and collection of [Bray's] biometric information." (*Id.* at 8 (citing Compl. ¶¶ 31-32, 41-42).) But he conspicuously avoids quoting the cited paragraphs of the Complaint, and none of them – or any others for that matter – in fact allege anything like the supposedly active collection Bray now claims.

Bray's actual allegations are that Lathem acted only *after* his biometrics were collected. Paragraph 31 alleges that "when an employee first begins work at a company that uses one of Lathem's biometric devices, they are required to have their facial geometry scanned in order to enroll them in the Lathem database." (Comp. ¶ 31.) Thus, the first allegation makes clear that the employer – not Lathem – "uses" the Lathem Device.³ Paragraph 32 merely alleges that Lathem fails to make the statutorily required disclosures to employees in connection with the collection. (*See id.* ¶ 32.) Similarly, paragraph 41 alleges that "[a]s a condition of employment with Hixon, Bray was required to scan his facial geometry using a Lathem device so his employer [Hixson] could track his time," which confirms that the requirement to use the device was imposed by the employer rather than Lathem. (*Id.* ¶ 41.) And paragraph 42 candidly acknowledges that Lathem "stored [Bray]'s facial biometric data" only "*subsequent[]*" to the scan and collection. (*Id.* ¶ 42 (emphasis added).)

Thus, by their plain terms, Bray's allegations do not describe the type of "active" collection of biometrics regulated by BIPA Section 15(b). Accordingly, even if Bray had not released his claims, Count II nevertheless should be dismissed.

---

³   It also stands to reason that the employer – again, not Lathem – establishes the "requirement" that its employees use a particular timekeeping device.

### III.   CONCLUSION

For the reasons set forth above, Lathem respectfully requests that the Court: (a) grant this Motion; (b) dismiss Bray's Complaint with prejudice; and (c) award Lathem such other and further relief as is appropriate.

Respectfully submitted this 12th day of July, 2022.

<div style="margin-left: 50%;">

Respectfully submitted,

**LATHEM TIME CORP.**

*/s/ Christopher G. Dean*
One of its attorneys

Christopher G. Dean (admitted *pro hac vice*)
MCDONALD HOPKINS LLC
600 Superior Ave., E, Ste. 2100
Cleveland, Ohio 44114
Tel: (216) 348-5400
cdean@mcdonaldhopkins.com

Nick P. Panayotopoulos
Georgia Bar No. 560679
WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Tel: (404) 876-2700
Fax: (404) 875-9433
npanayo@wwhgd.com

*Attorneys for Lathem Time Corp.*

</div>

## **RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Pursuant to Local Rule 7.1D of the U.S. District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

<u>*/s/ Christopher G. Dean*</u>

Christopher G. Dean (admitted *pro hac vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue, Suite 2100
Cleveland, Ohio 44114
Tel: (216) 348-5400
Fax: (216) 348-5474
*cdean@mcdonaldhopkins.com*

Nick P. Panayotopoulos
Georgia Bar No. 560679
WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Tel: (404) 876-2700
Fax: (404) 875-9433
*npanayo@wwhgd.com*

*Attorneys for Lathem Time Corp.*

{10365580:2 }

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing by electronically filing the same with the Court via the CM/ECF system, which will provide notice to all counsel of record.

Respectfully submitted this 12th day of July, 2022.

*/s/ Christopher G. Dean*

{10365580:2 }