UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRET BRAY, individually and on
behalf of all others similarly situated,

       Plaintiff,

   v.

LATHEM TIME CO.,

       Defendant.

CIVIL ACTION NO.
1:22-cv-01748-JPB

## ORDER

Before the Court are Defendant Lathem Time Corporation's ("Lathem")[1]

Motion to Dismiss (ECF No. 11) and Plaintiff Bret Bray's ("Bray") Motion for

Leave to File First Amended Complaint (ECF No. 16). Having reviewed and fully

considered the papers filed therewith, the Court finds as follows:

## I.    BACKGROUND

Bray filed a class action complaint against Lathem asserting numerous

claims under the Illinois Biometric Information Privacy Act ("BIPA"). Bray

alleges that Lathem violated BIPA by failing to obtain informed written consent

---

[1] Lathem asserts that it is incorrectly identified as "Lathem Time Co." in the
Complaint.

from Bray before collecting his biometric data and failing to maintain a

satisfactory biometric data retention and deletion policy.

Bray was employed by Hixson Lumber Sales of Illinois, Inc. ("Hixson")

from January 2019 through March 2019.[2]  As a condition of employment with

Hixson, Bray was required to scan his facial geometry for timekeeping purposes

using a "Lathem device."  Bray alleges that Lathem stored his facial biometric data

in Lathem's database but never informed Bray of the purpose or length of time for

which Lathem collected, stored and/or used the biometric data.  Bray asserts that

he is unaware of any biometric data retention policy developed by Lathem and that

he never signed a written release allowing Lathem to collect, store or use his

biometric data.

In 2019, Bray filed a class action lawsuit against Hixson for violations of

BIPA in Montgomery County, Illinois.  Around the same time, Bray filed a

separate class action lawsuit in the same court against Lathem.[3]  The Lathem suit

---

[2] Lathem asserts that Hixson is incorrectly identified in the Complaint as "Hixon Lumber Supply."

[3] Lathem asks the Court to take judicial notice of the Illinois court filings in deciding the Motion to Dismiss.  In resolving a motion to dismiss, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); *see also Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985) (stating that "[t]he court has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a 12(b)(6) motion" but

made similar allegations as the suit against Hixson and was removed to federal court, where it was ultimately dismissed. Bray re-filed the complaint against Lathem in the Superior Court of Cobb County, and that action was removed to this Court.

While the case against Lathem was pending in Cobb County, Bray entered into a class-wide settlement agreement in his case against Hixson (the "Settlement Agreement"). The Settlement Agreement provided that Bray and the settlement class:

> fully, finally, and forever, released . . . and discharged the Released Parties from all actual, potential, filed, unfiled, known or unknown . . . claims, demands, liabilities, rights, causes of action . . . of every nature and description whatsoever, whether based on [BIPA] or any other federal, state, local, statutory or common law or any other law, . . . from the beginning of the world to the date hereof, including but not limited to all claims which were made or could have been made by [Bray] in [the] Action.

ECF No. 11-3, ¶ 3.1. "Released Parties" was defined as:

> Hixson Lumber Sales of Illinois, Inc., all of its parents, successors, assigns, affiliates, wholly-owned subsidiaries, . . . sister and affiliated

---

"once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment"). However, an exception exists for judicially-noticed documents. "Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage," and doing so does not require conversion of the motion to dismiss. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 (11th Cir. 2015). Accordingly, the Court takes judicial notice of the publicly filed documents in Bray's Illinois actions without converting Lathem's Motion to Dismiss into one for summary judgment.

companies, divisions, associates, affiliated and related entities, employers, employees, agents, representatives, consultants, independent contractors, . . . attorneys, **vendors**, accountants . . . or any other representatives of any of these persons and entities, as well as all persons acting by, through, under or in concert with any of these persons or entities.

*Id*. ¶ 1.18 (emphasis added).

The Settlement Agreement was approved by the Illinois court in August 2021.  In the approval order, the court stated that the Settlement Agreement was "binding on, and [had] *res judicata* preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of [Bray] and all other Settlement Class Members" and that Bray and the Settlement Class Members were "permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Released Claims or any of the claims described in the Settlement Agreement against any of the Released Parties."  ECF No. 11-4, ¶¶ 17-18.

Lathem seeks to dismiss the Complaint on the grounds that it is barred by the terms of the Settlement Agreement.  In the alternative, Lathem contends that the Complaint fails to state a claim as to Count II because Bray did not allege that Lathem actively collected his biometric information.

Bray responds that his Complaint is not barred by the Settlement Agreement because Lathem is not among the Released Parties under that agreement; Lathem is

not a third party beneficiary of the Settlement Agreement; and Bray did not intend the Settlement Agreement to protect third parties like Lathem. Bray further contends that the Complaint sufficiently alleged that Lathem collected his biometric information because the Complaint states that such information was collected through a Lathem timekeeping device.

## II. <u>DISCUSSION</u>

### A. **Motion to Dismiss**

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988, 989 (11th Cir. 2012). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief[, however,] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement.") (internal punctuation omitted) (quoting *Twombly*, 550 U.S. at 557).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Burch v. Remington Arms Co., LLC*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (quoting *Twombly*, 550 U.S. at 555) (alteration in original). *See also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, and must instead "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Traylor*, 491 F. App'x at 990 (quoting *Iqbal*, 556 U.S. at 678).

1.    **Analysis**

Under Illinois law, the "construction, interpretation, or legal effect of a contract is a matter of law."[4]  *Mermelstein v. Menora*, 865 N.E.2d 239, 243 (Ill. Ct. App. 2007); *see also Mod. Steel Treating Co. v. Liquid Carbonic Indus./Med. Corp.*, 698 N.E.2d 710, 712 (Ill. Ct. App. 1998) ("The interpretation and construction of an unambiguous contract are questions to be decided by a court as a matter of law.").  It is well settled that "[a] court must construe the meaning of a contract by looking at [the] words used and cannot interpret the contract in a way contrary to the plain and obvious meaning of the[] words.  If the contract is clear and unambiguous, a reviewing court must enforce the contract as written."  *J.M. Beals Enterprises, Inc. v. Indus. Hard Chrome, Ltd.*, 551 N.E.2d 340, 342 (Ill. Ct. App. 1990).

"When construing a contract, [Illinois] courts traditionally apply the 'four corners rule' and look to the language of the contract alone to give effect to the intent of the parties."  *W. Bend Mut. Ins. Co. v. Talton*, 997 N.E.2d 784, 788 (Ill. Ct. App. 2013).  "Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of

---

[4] The Settlement Agreement contains an Illinois choice of law provision, and the parties agree that Illinois law applies here.

parol evidence or any other extrinsic aids." *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984).  In that analysis, the court "must interpret the words of the contract with their common and generally accepted meanings unless the contract specifies its own meanings." *Storino, Ramello & Durkin v. Rackow*, 45 N.E.3d 307, 313 (Ill. Ct. App. 2015); *see also Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Ill.*, 568 N.E.2d 9, 11–12 (Ill. Ct. App. 1990) (stating that "[w]ords in contracts are to be given their plain and ordinary meanings" and citing Merriam Webster and Black's Law dictionaries to support the court's interpretation of the words in the agreement).

A contract is ambiguous only when "the language of the contract is susceptible to more than one meaning." *W. Bend*, 997 N.E.2d at 788; *see also J.M. Beals*, 551 N.E.2d at 342 ("A contract term is ambiguous when its terms can reasonably be interpreted in more than one way.").  Under that circumstance, "a court may consider extrinsic evidence to determine the intent of the parties." *W. Bend*, 997 N.E.2d at 788.  However, "[a]n ambiguity is not created merely because the parties disagree." *Id*.  "In the absence of ambiguity, a court must treat the language in a contract as a matter of law and construe the contract according to its language, not according to constructions which the parties place on this language." *J.M. Beals*, 551 N.E.2d at 342.

8

The Court undertakes the analysis of the Settlement Agreement with these principles in mind.

Bray's Complaint against Lathem states that "Lathem is a leading provider of human resource management software and services . . . [to] track employee time and process payroll." ECF No. 11-2 at ¶ 1. Bray further alleges that as a condition of employment with Hixson, he was required to scan his facial geometry "using a Lathem device" and that Lathem "subsequently stored Bray's facial biometric data in its database(s)." *Id*. at ¶ 41-42. Bray's complaint against Hixson refers to Lathem as a "third-party vendor" to whom Hixson disclosed employees' facial geometry data. *See* ECF 11-2 at ¶ 32.

The Settlement Agreement in this case expressly provides that "vendors" are included as Released Parties under the agreement. The plain meaning of the word "vendor" is one who sells a product or service. *See Vendor*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/vendor (last visited Dec. 13, 2022) ("one that vends:  seller"); *see also* Black's Law Dictionary (11th ed. 2019) (defining "vendor" as a "seller"). Based on Bray's allegations that Lathem provided timekeeping devices and data storage services to Hixson, which Hixson used in tracking its employees' time, it is reasonable to infer that Lathem was Hixson's vendor. This conclusion is especially supported where Bray,

himself, referred to Lathem as Hixson's "vendor" in his complaint against Hixson. Importantly, Bray does not dispute that Lathem is Hixson's vendor. Because the Settlement Agreement expressly includes vendors in the categories of Released Parties, the Court finds that Lathem is included that group.

Bray cannot seek to change the express language of the Settlement Agreement by arguing that the decision not to name Lathem specifically in the Settlement Agreement necessarily indicates that he did not intend to release Lathem. "The intention of the parties to a contract must be determined from the language employed in the contract." *Berkeley Properties, Inc. v. Balcor Pension Invs., II*, 592 N.E.2d 63, 67 (Ill. Ct. App. 1992); *see also Rakowski*, 472 N.E.2d at 794 ("'What the parties to a written contract may have understood as to the meaning of the language used is not admissible in evidence. The intention or understanding of the parties, when there is a written contract in evidence, must be determined not from what the parties thought but from the language of the contract itself.'") (citation omitted). And that language expressly identifies "vendors" (like Lathem) as one of the Released Parties.

Bray's additional argument that Lathem is not an intended beneficiary of the Settlement Agreement misses the point. As the cases that Bray cites in support show, that issue is relevant when a third party who seeks to enforce an agreement

is not specifically covered in the Agreement. *See, e.g.*, *Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E.2d 106, 107 (Ill. Ct. App. 1989) (rejecting a third-party contractual claim by the owner of a project against a subcontractor hired directly by the general contractor where the contract between the owner and the general contractor expressly disavowed a contractual relationship between the owner and subcontractors). That is not the case here. To the contrary, the Settlement Agreement contains an express declaration in the Settlement Agreement that the release applies to vendors like Lathem. Lathem's claim is not that it is a third-party beneficiary of the Settlement Agreement. Rather, Lathem argues that it is directly covered by the agreement. As set forth above, the Court agrees.

Bray does not dispute that the claims raised in his Complaint would be barred by the Settlement Agreement if Lathem is a covered party. Indeed, the Settlement Agreement's release of "all actual, potential, filed, unfiled, known or unknown . . . claims . . . of every nature and description whatsoever, . . . from the beginning of the world to the date hereof, including but not limited to all claims which were made or could have been made" expresses an unequivocal intent to release any and all claims Bray could bring against the Released Parties. *See Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*, 989 F.3d 556, 564 (7th Cir. 2021) (stating that the court could not "conceive of how [an agreement

releasing] 'all claims that were filed or could have been filed' could be construed as anything but [a] 'clear and explicit'" statement that the parties "resolved all claims that were filed or could have been filed"). "Logically, the 'plain, ordinary and popular meaning' of the broad, unqualified language of [a] release entails a broad, unqualified release of claims." *Id*. Because Lathem is included in the group of Released Parties, all actual or potential claims Bray had against Lathem were released under the Settlement Agreement. Accordingly, Bray is barred from bringing this action against Lathem.[5]

**B.    Leave to Amend**

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." While "[t]he court should freely give leave when justice so requires," *id*., Rule 15(a) "gives a district court 'extensive discretion' to decide whether or not to allow a party to amend a complaint," *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (internal citations omitted). Thus, a court does not abuse its "liberal discretion" by denying leave to amend when the amendment would prejudice the defendant, cause undue delays or is futile. *Id.*; *see also Bryant v.*

---

[5] Given this conclusion, the Court need not address whether the Complaint fails to state a claim as to Count II of the Complaint.

*Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (stating that denial of leave to amend is only appropriate where (1) there has been undue delay, bad faith, dilatory motive or repeated failures to cure deficiencies by amendments previously allowed; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) amendment would be futile).

In *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1284 (5th Cir. 1981), the court stated that "[a] pleading [that] abandons the original plaintiff and class and asserts new claims upon which the original plaintiff and class could not recover, has the characteristics of a new lawsuit rather than an amended complaint." Therefore, it affirmed the district court's denial of leave to amend a complaint to substitute new plaintiffs, a new class and a new cause of action after the court found that the original class plaintiff had no standing and granted summary judgment against it. *See id*. 1284-85. The court explained that the original plaintiff had no "power to amend the complaint so as to initiate a new lawsuit with new plaintiffs and a new cause of action." *Id*. at 1283. "Since there was no plaintiff before the court with a valid cause of action, there was no proper party available to amend the complaint." *Id*. at 1282; *cf. Jaffree v. Wallace*, 837 F.2d 1461, 1466 (11th Cir. 1988) (finding that the district court properly denied leave to amend where the plaintiff sought to add new plaintiffs in an effort to

13

"surmount an otherwise fatal res judicata bar" but "'[n]o amendment could give [them] a cause of action'" against the defendants) (citation omitted).

Here, Bray asserts that his proposed amendment to the Complaint would only "change the [c]ourt caption from Superior Court of Cobb County, Georgia to [this Court]" and "substitute[] Maria Martinez as the lead [p]laintiff in this action." Bray further contends that allowing the amendment would moot Lathem's Motion to Dismiss and "streamline the issues presented in this litigation." He concludes that the interest of justice will be served by the amendment.

However, as Lathem points out, the proposed amendment does much more. First, Martinez' allegations in the proposed amended complaint are different from Bray's allegations in the current Complaint. For example, Martinez does not allege that she worked for Hixson, and her claims concern only the collection of fingerprints. On the other hand, Bray alleges that he used a Lathem device in the course of his employment with Hixson, and the Complaint concerns the collection of facial geometry information. The proposed amended complaint also defines the relevant class as persons whose fingerprints were allegedly collected through a Lathem device whereas the current Complaint defines the class as persons whose facial geometry information was collected through the device. In short, the

amendment would remove Bray and the currently defined class entirely from the action and replace them with a new plaintiff, new claims and a new class.

Bray does not respond to Lathem's argument that the most likely applicable federal rules of civil procedure—Rules 17 (substitution of a real party in interest), 21 (joinder of a party) and 25 (substitution in the case of death, incompetency, etc.)—do not authorize amendment in the circumstances of this case. Nor does Bray's Motion provide any substantive argument or cite any authority showing that his requested amendment is appropriate. In light of the opinion in *Summit* and the lack of legal authority for Bray's proposed amendments, the Court finds that it is not appropriate to allow Bray leave to amend his Complaint. The new plaintiffs whom Bray seeks to substitute in this action are at liberty to file their own lawsuit.

## III.    <u>CONCLUSION</u>

For the reasons set forth herein, Lathem's Motion to Dismiss (ECF No. 11) is **GRANTED**, and Bray's Motion for Leave to File First Amended Complaint (ECF No. 16) is **DENIED**. The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 19th day of December, 2022.

J. P. BOULEE
United States District Judge